### George Schonfield et al. v. Tilman P. Turner.

#### No. 2612.

1. **Life Insurance—Public Policy.**—It is against public policy to allow any one not owning an insurable interest (that is, one not related by blood or otherwise, nor a creditor of the insured), to become the owner, by assignment or otherwise, of insurance upon the life of a human being.

2. **Creditor of Insured—Purchaser, etc.**—A creditor of the assured may lawfully become the owner of such insurance to an extent requisite to protect him against ultimate loss of his demand. A purchaser or assignee of it will be recognized as having an interest in it sufficient to repay him the purchase money invested in it, including advancements in nature of dues, assessments, and premiums to preserve and keep the insurance in force, with lawful interest.

3. **Beneficiary—Heirs, etc.**—Where the policy is made payable to one not entitled to hold it, as if to a purchaser, he will be considered a mere trustee—the heirs, in absence of other disposition, to take it or the residue.

Error from Rusk. Tried below before the Hon. J. G. Hazlewood.

This is a litigation as to the right to money paid into court by the Supreme Lodge Knights of Honor upon a benefit certificate issued by it to David Schonfield for $2000. The certificate was payable to defendant in error. The widow and children of Schonfield contest the claim of the payee. Losing the case below, they bring writ of error. The opinion sufficiently states the facts.

*Rufus Price* and *F. B. Sexton*, for plaintiffs in error. — 1. The petition, first supplemental petition, and trial amendment of plaintiff, separately or all taken together, disclose no such interest of plaintiff in the

benefit certificate sued on by plaintiff as authorized him to maintain the suit. Treating the certificate as a *quasi* policy of insurance, which is done by plaintiff and the district judge who tried the case, it is manifest by the plaintiff's petitions that plaintiff had no insurable interest in the life of David Schonfield. Wainright v. Bland, 1 Moo. & R., 481; 1 Taylor's Med. Juris., 672: 2 Id., 640.

2. It is manifest on the face of all the petitions of the defendant in error that the certificate sued on is, so far as defendant in error is concerned, a wager, contrary to law, to public policy, and therefore void. Price v. Sup. Lodge Kts. of Hr., 68 Texas, 361; Warnock v. Davis, 104 U. S., 775; Cammock v. Lewis, 15 Wall., 647; Missouri v. Sturges, 18 Kans., 93; 4 Waits' Act. and Def., p. 91; Life Ins. Co. v. Hazzard, 41 Ind., 116; 45 Me., 104; 66 Mo., 63; Loomis v. Life Ins. Co., 6 Gray, 399; Ruse v. Life Ins. Co., 23 N. Y., 523; Life Ins. Co. v. Hogan, 80 Ill., 44–6; May on Life Ins., sec. 398.

*Booty & Young, J. H. Turner* and *Martin Casey,* for defendant in error. — 1. It is not always necessary that the person holding the policy should have an insurable interest in the life insured to entitle him to recover on the policy. The doctrine of wager policy applies in cases only where the holder himself attempts to procure a policy on his motion, and without the original solicitation or application of the person whose life is insured. When the person whose life is insured voluntarily, without the request or solicitation of the person to whom the policy is made payable, procures an insurance on his life and then has the loss made payable even to one having no insurable interest in his life, the policy is valid. 52 Am. Reg., p. 140, and authorities cited; Id., 141, note in Currier v. Life Ins. Co.; May on Ins., sec. 112; 64 Miss., 617.

2. Every person has an insurable interest in his own life; and where any person procures a policy on his own life and appoints another as his beneficiary, that beneficiary need not allege in his pleading an interest in the life of the insured. May on Ins., sec. 106; 53 Am. Rep., 516–18; Langdon v. Life Ins. Co., Am. Law Rep., p. 386; 14 Fed. Rep., p. 272; 120 Ill., 121.

3. The insurance of one's life by a party for the benefit of one not a relative is not void on the grounds of public policy, as tending to encourage the commission of crime; but if it were, no one but the insurer can raise that question; that can not be urged by the heirs of the person insured. Johnson v. Van Epps., 110 Ill., 562.

4. The law does not prohibit the person procuring the policy from entering into such arrangement with the insurer as may be agreed on, either as to the persons who are to receive the benefit of the policy or as to what control over it the insured is to exercise. In these respects an insurance policy does not differ from any other contract authorized by

law, and should be subject to the same interpretation. The person pro-
curing the policy for the benefit of another may reserve the right to
change this designation in whole or in part, and the law will respect any
change he may make in the beneficiaries of the policy in pursuance of
such right. Splawn v. Chew, 60 Texas, 534.

5. Our courts will be governed in their interpretation of benefit cer-
tificates issued by the Knights of Honor by the constitution and laws of
that order, according to the interpretation given them by that order, when
they are not in conflict with the laws of Texas. Splawn v. Chew, 60
Texas, 535; Supreme L. Knights of Honor v. Martin, Ins. Law Journal,
628; Gentry v. Supreme Lodge Knights of Honor, 20 Cent. Law Jour.
for May, 1885; Highland v. Highland, 13 Brad., 510; 109 Ill.

6. Although there is no doubt that every person may insure his own life
and make whomsoever he pleases the payee in his certificate, yet whether
the payee may have been guilty of fraud, duplicity, and circumvention to
induce the insured to make him the beneficiary is properly a question
for the jury, and should be submitted to them to determine whether the
transaction was innocent or a wagering speculation on human life. The
Connecticut Mutual v. Shafer, 94 United States, 457, quoted in note 27,
American Reporter, 327 and 328, has this language: "As between stran-
gers or persons not thus nearly connected, such a transaction would be
evidence to go to the jury, from which, according to the circumstances
of the case, they might or might not infer that it was mere gambling;"
and in the same case the Supreme Court of the United States says: "And
there is no doubt that a man may effect an insurance on his own life for
the benefit of a relative or friend." 53 Am. Rep., 518; Life Ins. Co. v.
France, 94 U. S., 561; Batdorf v. Fehler, 9 Atl. Rep., 468.

7. A sale and assignment of a policy of life insurance to one who has
no interest in the life insured, made not as a contrivance to circumvent
the law but as an honest and bona fide transaction, is not void. Life Ins.
Co. v. Allen, 138 Mass., —; S. C., 52 Am. Rep., 245; Bursinger v. Bank,
67 Wis., 75; S. C., 58 Am. Rep., 849, and authorities cited.

8. The holder of a valid policy is entitled to the value of the same
before his death by a bona fide sale or assignment thereof. Such sale or
assignment may in fact be absolutely necessary in order to get any bene-
fit of his policy. Pearson v. Flanagan, 52 Texas, 276, *et seq.*

HENRY, ASSOCIATE JUSTICE.—The order of Knights of Honor is an
incorporated body. One purpose of its existence is to furnish insurance
upon the lives of the members of its subordinate lodges.

In the year 1880 one David Schonfield became a member of the order.
Among the objects of the corporation its charter states one in the fol-
lowing language:

"To promote benevolence and charity by establishing a widows and

orphans benefit fund, from which, on satisfactory evidence of the death of a member of the corporation who has complied with its lawful requirements, a sum not exceeding five thousand dollars shall be paid to his family or as he may direct."

The constitution of the corporation at the same date, among others, contained the following provisions:

"Each applicant shall direct in his application to whom he desires his death benefit paid. The beneficiary may be changed as the member may thereafter direct, in accordance with the laws of this order, and such changes shall be entered in the benefit certificate. A member may at any time, while in good standing, surrender his benefit certificate, which, together with a fee of fifty cents, shall be forwarded by the reporter of his lodge, under seal, to the supreme reporter, who shall thereupon cancel the old certificate and issue a new one in lieu thereof to such member, payable as he shall have directed, said direction and surrender to be made on the back of the benefit certificate surrendered, signed by the member and attested by the reporter under the seal of the lodge.

"In the event of the death of one or more of the beneficiaries designated by the member, before the decease of such member, if he shall make no further disposition thereof, upon his death such benefit shall be paid in full to the surviving beneficiary or beneficiaries, each sharing pro rata as provided in the benefit certificate.

"In the event of the death of all the beneficiaries designated by the member before the decease of such member, if he shall make no other disposition thereof, the benefit shall be paid to the heirs of the deceased member, and if no person or persons shall be entitled to receive such benefit by the laws of this order, it shall revert to the widows and orphans benefit fund."

When Schonfield first became a member of a lodge he received a "benefit certificate," issued under the above quoted charter and constitutional regulations, binding the "Supreme Lodge" of the corporation to pay out of the widows and orphans benefit fund, to one Friedlander, the sum of two thousand dollars, in accordance with and under the laws governing the order, upon satisfactory evidence of the death of said member and the surrender of the certificate; provided, that the certificate had not been surrendered by said member, or canceled at his request and another certificate issued in accordance with the laws of the order.

After paying his dues for several years Schonfield's health failed him, and he seems to have become very poor, having neither the money necessary for his personal maintenance nor to pay his dues to the lodge.

In this condition of affairs the appellee T. P. Turner furnished him fifty dollars and took from him a transfer of his benefit certificate. The transfer was made by Schonfield by filling up and signing a blank transfer on the back of the benefit certificate. Subsequently, on the twenty-

eighth day of June, 1884, the Supreme Lodge Knights of Honor, upon Schonfield surrendering the first certificate, issued to him in lieu thereof a second one for the same amount, payable to T. P. Turner, and similar in all respects to the first one.

The laws of the order when the two certificates were issued, as well as the terms and conditions of the certificates themselves, were substantially the same, and so remained until the first day of July, 1884, when an amendment of the constitution of the order went into effect, whereby a clause of the constitution formerly reading that the insurance money be paid "to his (the member's) family or as he may direct," was so changed as to read that it should be paid "to such member of his family or person dependent on him as he may direct and may designate by name."

After Turner purchased the certificate he paid the required assessments and dues until Schonfield died; the whole amount paid out by him, including the fifty dollars, having been, according to his own testimony, "seventy-five or eighty dollars."

It seems that it was not considered by any of the parties necessary to consult Friedlander about the transfer or the surrender of the first certificate, and that in fact he did not participate in either act.

David Schonfield, when he joined the order, had a wife and five minor children. He did not live with or provide for them, and it seems that none of the parties to the aforesaid transactions had any knowledge that he had a family or that he had ever had a wife. He was divorced from his wife. He died on the 20th day of September, 1884.

The corporation collected the money from its members, but before it was paid to Turner, as the holder of the benefit certificate, the children of Schonfield and their mother asserted a claim to it, upon which the corporation declined to pay it to either party.

Turner sued the corporation to recover the money. The corporation answered, admitting that it held the money and asking that the five children of David Schonfield, who were all minors and whose names were alleged in the answer to be Emma, Bertie, George, Tibie, and Fred Schonfield, and their mother Laura Schonfield Schuterlee, be made parties defendant. The defendant brought into court the amount of money in controversy, to be held by the clerk and paid over to the party adjudged to be entitled to it.

The record does not show that process was issued or served as prayed for by defendant, but Laura Schonfield Schuterlee, Emma Schonfield, Bertie Schonfield, Fred Schonfield, and Tibie Schonfield appeared by attorney and answered, alleging that they had been cited to answer.

Afterwards an order was entered appointing a guardian *ad litem* for Emma Schonfield, Bertie Schonfield, George Schonfield, Fred Schonfield and Tibie Schonfield.

The record does not show that the minor George Schonfield was ever

cited or that any answer for him was ever filed.    There was a suggestion of the marriage of Laura Schonfield Schuterlee, but her husband was never made a party and never appeared or pleaded.    A judgment was rendered on the verdict of a jury in favor of plaintiff.

The minors Emma Schonfield, Bertie Schonfield, George Schonfield, Fred Schonfield, and Tibie Schonfield, by their guardian *ad litem,* prose-cute this writ of error to reverse the judgment.

Turner was not related by blood or otherwise to David Schonfield, he was not his creditor, and consequently had no insurable interest in his life.

It is contrary to public policy to allow any one not owning such insur-able interest to become the owner, by assignment or otherwise, of insur-ance upon the life of a human being.

A creditor of the assured may lawfully become the owner of such insur-ance to an extent requisite to protect him from ultimate loss of his demand, and a purchaser or assignee of it will be recognized as having an interest in it sufficient to repay him the purchase or other money in-vested in it by him, including advancements in the nature of dues, assess-ments, and premiums to preserve and keep the insurance in force, with lawful interest thereon.    What amount a creditor, as such, may procure insurance for, and the rules regulating his collection of it, depend upon contingencies not necessary to discuss in this case.

What the policy of the law forbids to be done must be treated by courts, when administering the law, as never having been done.

The undisputed evidence is that Turner's first claim of ownership of the insurance was through an assignment to him of the Friedlander ben-efit certificate.

The case in this respect comes directly within the decision of this court in the case of Price v. Knights of Honor, 68 Texas, 361, in which it is held that such a transfer is prohibited by law.

The fact that subsequently Schonfield surrendered the transfer certifi-cate to the lodge and procured another one payable directly to Turner, does not change the principle or affect the result.    The public policy that for-bids such transactions is entirely independent of the consent or control of the insurer or the insured.

We think it clear that the laws of the order at the dates of the trans-actions in question recognized David Schonfield as the only beneficial owner of the insurance, and that the person named in the certificate, whether it was Friedlander or Turner, was only an appointee to collect and receive the money in the event that Schonfield died without other-wise disposing of it.

The rule and the practice that permitted the member, and him alone, to dispose of the insurance, at his own pleasure, without regard to any right or claim of any person to whom it had been issued or transferred, is

utterly inconsistent with the idea of a beneficial interest in any person other than the member himself. That mode of dealing with it is consistent only with the proposition that the party in whose name it was—whether originally or by transfer—held it merely as a trustee for the use and benefit of the member. Upon the death of the member the beneficial interest vested in his heirs.

When the person designated to receive the insurance is held by the law incapable of taking it for his own use, on grounds of public policy it will be entirely consistent with the manifest purposes of the order to make the same disposition of the money that would have been made if he had been dead. As we have seen, the laws of the order direct it to be paid in that contingency to the heirs of the member, not to the heirs of the holder or transferee of the benefit certificate. Such holder of the certificate may no doubt collect the money for the use of the heirs, and enforce such proper claims of his own against the fund as the law recognizes. After allowing to appellee the fifty dollars originally paid, and amount subsequently paid by him for dues and assessments, with interest thereon at the rate of eight per cent per annum, the remainder of the money belongs to the heirs of David Schonfield, as they existed at the date of his death. If his wife had then been divorced she was not one of them, and is not in any capacity entitled to a share of the money.

On another trial the exception to the pleading of plaintiff charging that she was divorced, instead of being sustained ought to be overruled.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Delivered December 6, 1889.