MARY A. CARSON ET AL. *v.* VICKSBURG BANK ET AL.

1. MUTUAL INSURANCE. *Knights of Pythias. Benefit certificate. Laws of the society. Beneficiary.*

   The rights of a beneficiary named in a certificate of a benevolent society, such as the Knights of Pythias, are inchoate, imperfect and ambulatory until the death of the member holding the endowment certificate. Such right is a mere expectancy, liable to be defeated by a change of appointment legally made.

2. SAME. *Trustee. Creditors.*

   If the holder of an endowment certificate in the Knights of Pythias substitutes a new beneficiary, not intending him to take the fund as his own, but to receive it as a trustee for creditors, the previous beneficiary loses all right as a designated beneficiary, but, under the laws of the order, the creditors can receive no benefit therefrom.

3. SAME. *Widow and children.*

   If, in such case, the money be paid by the order, the trustee beneficiary, under the laws of the order, will hold the fund for the benefit of decedent's widow and children, even where the widow was the beneficiary named in the original certificate.

FROM the chancery court of Warren county.

HON. CLAUDE PINTARD, Chancellor.

The facts are stated in the opinion of the court.

*Miller, Smith & Hirsch,* for appellant.

It is perfectly evident that the Knights of Pythias never intended to engage in the insurance business indiscriminately. When the transfer was made Bruzelius did not have an interest in the certificate, and did not pretend to have, and although claiming to be affiliated with the order, and charged with a knowledge of its aims and enactments, he voluntarily became a mere vehicle for the transmission of Carson's interest in the

certificate to the Halpin Company; and this was so clearly
shown that the parties opposed to Mrs. Carson did not even
earnestly seek to explain or offer extenuation for the reprehen-
sible act.     Halpin had his grasp on Carson, charging him (as
shown by his accounts) fifty dollars per month commissions for
loans and advances, and, in his greed for security, entered into
a conspiracy with Bruzelius to divert the money rightfully be-
longing to Mrs. Carson into his own pocket.     Bruzelius was a
convenient tool, and by mere formalities, the wife, and the only
person in the light of the evidence who could honestly receive
this money, was, without her knowledge or consent, relieved,
so far as could be done by Bruzelius and Halpin, of any appa-
rent interest in the certificate, and the Halpin Company substi-
tuted to her rights.     What could not be done directly, a court
of equity should not allow to be done indirectly.  Fraud should
never receive judicial sanction.     Courts of justice are consti·
tuted to punish the wrong and uphold the right.     We respect-
fully submit that the Vicksburg Bank cannot claim any higher
rights in this endowment than the Halpin Company, and that,
as the latter had no right to it under the Pythian constitution,
and as Bruzelius had no real interest in the transaction, the
whole proceeding should be condemned as fraudulent and void,
and the money restored to the person originally entitled thereto,
Mrs. Carson, the appellant.

*Dabney & McCabe,* for appellees.

That the interest of the beneficiary of a member in one of
these mutual benefit orders is ambulatory and nothing but an ex-
pectancy, and one which the member may cut off at any time at
will, is well established.     3 Am. & Eng. Enc. L. (2d ed.), p.
990 *et seq.; Marsh* v. *Legion of Honor,* 4 L. R. A., 382; *Rich-
mond* v. *Johnson,* 28 Minn., 447; *Milner* v. *Bowman,* 5 L. R.
A., 95; *Clark* v. *Hirschl,* 9 L. R. A., p. 841.     Carson had a
right to change his beneficiary, and, in doing so, he had a right
to make a brother knight, Bruzelius, the beneficiary, either as

the absolute owner of the benefit or under some understanding with him that the money should be used or applied in a particular manner.   Why not?   No consideration is necessary.

In article twelve of the constitution of the order is the following: "*Provided,* That an applicant may name as beneficiary his betrothed, his subordinate lodge, his endowment rank section, or a brother knight."  This is the law of the order, and all the courts hold it to be a part of the contract of insurance, and, by its terms, he can give this benefit to a brother knight—the greater includes the lesser.   If he could absolutely give it to a man in no way connected with him, simply because he was one of about one hundred thousand persons who happened to belong to the same order, might he not give it to him charged with a trust to be used to discharge some moral or legal obligation which he is under?   Again, why not?   We refer the court to 3 Am. & Eng. Enc. L. (2d ed.), 999; Bacon Ben. Soc., sec. 310*b.*

We do not controvert the rule which briefly and, we think, correctly is: One may not insure the life of another in whom he has no insurable interest, nor procure that other to do it for his benefit.   The rule grows out of a matter of public policy which is too clear to admit of controversy, viz., that murder should not be encouraged.   But the rule does not forbid a man taking out insurance on his own life for the benefit of one who has no insurable interest in the assured, if he does it himself in good faith.   *Conn. Life Co.* v. *Schaffer,* 94 U. S., 457; *Ætna Ins. Co.* v. *France,* 94 U. S., 561; *Milner* v. *Bowman,* 5 L. R. A., 99.

*Shelton & Brunini,* on same side.

Mrs. Carson cannot complain of the decree, because the original certificate issued in her favor had been surrendered, and the surrender accepted by the Knights of Pythias.   In making this surrender Carson did what he had a right to do under the charter and by-laws of the Knights of Pythias, and he did not, in so doing, affect any right that Mrs. Carson had.   Her rights,

while that certificate stood, were simply contingent, and subject at any time to be defeated by Carson, either by making a change in the name of the beneficiary in the original certificate or by surrendering the original certificate, as he did in this case. The authorities referred to on this point are numerous, and no one will contest this proposition. In the second place, it could have been of no benefit to the Knights of Pythias, as they had issued the policy in the favor of Bruzelius, as applied for by Carson, and all of the assessments had been paid upon that policy. They had entered into this contract with Carson, and Carson had not failed to perform his part of it. Carson had a right, under the charter, to insure his life for the benefit of Bruzelius, a brother knight, and Bruzelius could then have assigned that policy to anybody that he saw proper, and it could not have been contended that the policy was void for want of insurable interest in the party to whom it was assigned. It could not be treated as a wagering policy, because all those cases which have denounced policies as wagering policies have rested upon the ground that the party in whose favor the insurance was taken out had no interest, pecuniary or otherwise, in preserving the life of the party insured. In this case the Halpin Company, to whom it is conceded that Carson was indebted, did have a pecuniary interest in his life far in excess of the amount of the policy issued. *Shea* v. *Mass. Ben. Assn.*, 39 Am. St. Rep., 475; *Lamont* v. *Legion of Honor*, 81 Fed. Rep., 177; *Lamont* v. *Mut. Ben. Assn.*, 30 Fed. Rep., 817.

Argued orally by *Joseph Hirsch*, for appellant.

TERRAL, J., delivered the opinion of the court.

This is a contest between the Vicksburg Bank, as complainant, and Mary A. Carson, respondent and cross complainant, as to the application of the proceeds of a certificate of membership in section 34 of the endowment rank of the Knights of Pythias at Vicksburg, paid into court by the board of control of the supreme lodge of said order.

It appears from the pleading and evidence in the case that John C. Carson was, on the twelfth day of November, 1890, admitted to membership in section 34, Knights of Pythias, and a certificate thereof, in the sum of $3,000, payable to Mary A. Carson, was issued to him; that said John C. Carson, having become indebted to John F. Halpin Co., an incorporated mercantile company, in a sum of money, largely exceeding $3,000, and for the purpose of securing said John F. Halpin Co. its said debt, did, on the ninth day of May, 1891, at the request of said John F. Halpin Co., cause a change to be made in the beneficiary of his said certificate of membership, whereby J. K. Bruzelius was substituted for Mary A. Carson; that said Bruzelius was not intended to be the real beneficiary in the certificate, but was so named that the John F. Halpin Co. might become the real beneficiary therein; that said Carson delivered said certificate of membership to John F. Halpin Co. as collateral security for the debt due it by him; that the Vicksburg bank, by assignment, has become entitled to all the interest in and right to said endowment certificate as fully as the same was vested in John F. Halpin Co.; that the John F. Halpin Co., from the time of the assignment to it as collateral security of said certificate of membership, paid to the Knights of Pythias all the dues and assessments of said John C. Carson up to the date of his death; and that John C. Carson died in the month of January, 1893, a member in good standing in said benevolent society.

It further appears that the defendant corporation denied any knowledge of the purpose of Carson in changing the beneficiary from Mary Carson to Bruzelius, and there is no evidence that it had any notice or information of such purpose, though, perhaps, Maganus, the secretary of section thirty-four, endowment rank, had good reason to believe that it was done for the purpose of making Bruzelius the nominal beneficiary, and for the purpose of passing it to the John F. Halpin Company, as collateral security. The $3,000 endowment was ready to be paid

by the defendant company, and by agreement of the parties was placed in the Vicksburg Bank, to abide the result of this suit.

In accordance with the act of congress, entitled "An act to provide for the creation of corporations in the District of Columbia by general law," approved May 5, 1870, Jos. T. K. Plant, and six others, filed in the office of register of deeds, in the District of Columbia, a certificate of association, to incorporate themselves and their associates as a benefit society, under the name of "The Supreme Lodge of the Knights of Pythias of the World." The charter and constitution of said association is incorporated in the record of this case, and at the time Carson was admitted a member, that part of the constitution which is material to this case is set out below, but at the time of the death of Carson that part of it between brackets had been repealed and annulled.

"ARTICLE XII.—*Beneficiaries.* Sec. 1. Each applicant for membership in the endowment rank shall designate in his application some person or persons related to, or dependent upon, him for support, as hereinafter provided, to whom the benefit shall be paid when due; and the name or names and the relationship of the person or persons so designated shall be inserted in the endowment certificate, except in case, when the endowment is made payable to wife and children, the names of the children may be omitted, and, in the event of such member's death, all surviving children of deceased shall be considered legal beneficiaries; [*Provided,* That an applicant may name as beneficiary his betrothed, his subordinate lodge, his endowment rank, section or a brother knight.] The interest of any person so designated, or their heirs, shall cease and determine in case of his or her death during the lifetime of such member. Upon the death of a member of this rank, the benefit, as specified in the endowment certificate, shall be paid by the supreme secretary, by warrant on the endowment rank depositary, signed by the president of the board of control and attested by the supreme secretary, through the secretary of the section, to the

person or persons designated in said certificate, as entitled thereto. In case of the death of the person or persons designated as entitled to such benefit, before the same shall have accrued, it shall be paid to the widow and children of the deceased member; and if there be no widow nor children nor any of them, it shall be paid to the father and mother, sisters and brothers, share and share alike; *Provided*, That the amount of said benefit shall be held sacred—a legacy to and for said legatees—and shall never, under any circumstances, be liable for, nor be appropriated to, the payment of any debts against the estate of said deceased member. If none of the persons herein designated as entitled to said benefit be alive when the same shall accrue [then, and in that case, the said benefit shall be paid to the lawful heirs of the deceased member, and, if there be no such heirs], the liability of the endowment rank, Knights of Pythias of the World, by reason of said certificate, shall cease and determine.''

It is clear that Carson, in causing the endowment certificate to be made payable to Bruzelius, did so for the purpose of pledging it to 'John F. Halpin Company, as a security for the debt due it by him. The bill of the Vicksburg Bank charges this fact, the respondent and cross complainant, Mary Carson, admits it, and Bruzelius himself, at the final hearing, virtually admitted the same thing. If, therefore, it was competent for Carson to dispose of his endowment certificate in that manner, the right of the bank to the fund is complete. It is settled that the right of a beneficiary of a benevolent society, like this of the Knights of Pythias, is inchoate, imperfect and ambulatory until the death of the member holding the endowment certificate; that such right is a mere expectancy, liable to be defeated by a change of appointment legally made. As Carson surrendered to the supreme lodge of the Knights of Pythias the endowment certificate, payable to his wife, Mary Carson, she can predicate no right to this fund of such surrendered certificate. It was canceled.

The Knights of Pythias is a corporation created by law. A corporation possesses only the powers and capacities which are specifically granted by the act of incorporation, and such as are necessary to carry into effect the powers expressly granted; it can only make such contracts as are connected with the purpose for which it was created, and which are necessary, either directly or indirectly, to answer that end. The Knights of Pythias, under the act of congress authorizing its creation for benevolent purposes only, has prescribed to itself a constitution and by-laws in harmony with said act, whereby it undertakes, in consideration of certain dues and assessments, to secure, on the death of the member, a pecuniary benefit to his widow and children, or, if he leaves no widow or child, to his father and mother, sisters and brothers, and to no other persons. Its constitution expressly declares that the amount of the benefit shall be held sacred, a legacy to and for said legatees, and shall never, under any circumstances, be liable for, nor be appropriated to, the payment of any debts against the estate of the deceased member.

' It is obvious that, if the member holding the endowment certificate could validly transfer it to his creditor as a security for his debt, the policies of such societies, like those of regular insurance companies, would become, to some extent, the subject of trade and speculation, in contravention of the expressed policy of the law creating them, and in total subversion of the avowed objects of these associations.

It was taken for granted, in *More* v. *Bennett*, 140 Ill., 95, that the constitution and by-laws of an association constitute the contract between the society and its members. While the right of the beneficiary of a mutual benefit society of this kind is contingent during the life of the appointor or donor, yet, this imperfect and ambulatory right becomes a vested interest on his death. Does this vested right go to Bruzelius for himself beneficially, or to him as trustee for creditors, or as trustee for the widow and children? In our judgment the real

beneficiaries can only be the persons specified in the laws of the order, to wit, the widow and children, and that Bruzelius is a trustee for them. Owing to a difference in the laws of the Knights of Pythias from the laws of other similar societies where like contests have arisen, and which are reported in the books referred to in the briefs of the learned counsel in this case, we find no case involving the precise point in this case. Some of them, by analogy, throw a faint light upon it, but it is dim and uncertain. If, by reason of the change of the constitution of the Knights of Pythias before the death of Carson, the appointment of Bruzelius was revoked, still, a like result would happen, and the fund should go to the widow and children.

*Wherefore the decree rendered in the court below is reversed, the cause is remanded, with leave to Mary Carson to amend her answer and cross bill, and make the children of Carson parties, if there be any, and that the case proceed according to the principles announced in this opinion.*