## B. C. Kelly v. Y. M. Searcy, Guardian.

### No. 1699.   Decided May 15, 1907.

**1.—Jurisdiction—Amount in Controversy—Interest.**

In an action to recover a sum collected from a third party by defendant, but equitably belonging to plaintiff, exceeding $1,000, but made up of principal less than that amount and of interest thereon so collected, the entire sum sued for was principal, within the meaning of the law determining the respective jurisdictions of the County and of the District Courts by the amount in controversy exclusive of interest; the suit was properly brought in the District Court; and the Supreme Court had jurisdiction to grant writ of error. (P. 570.)

**2.—Benefit Society—Constitution and Rules—Transactions with Third Party.**

The constitution and rules of a beneficiary association (Knights of Honor) govern in the settlement of all matters connected with the insurance, between that order and the assured, the beneficiary, or third persons; but not as to transactions had or rights accrued between the assured or beneficiary and third persons; these must be adjudicated according to the law. (P. 570.)

**3.—Same—Will—Pledge of Certificate—Equity.**

The insured and beneficiaries agreed with plaintiff, who undertook to and did advance the money to reinstate their forfeited benefit certificate in the Knights of Honor and pay all subsequent assessments during the life of insured, that he was to have a right to reimbursement out of the proceeds of such insurance, and pledge of the certificate therefor. On the death of the beneficiary, the wife, before that of insured, the certificate became payable to his heirs, minor children, by the rules of the association, which also forbade its assignment, hypothecation, or the control of its disposition by will. The will of insured bequeathed it to the heirs, subject to the payment from the proceeds of the advances made by plaintiff, under the foregoing agreement, to keep it in force. Plaintiff, after death of insured, surrendered the certificate to the guardian of the heirs to be collected, and, on his collecting the insurance, sued him as guardian to recover the sums advanced. Held that the contract was a legal one, the rights of the parties unaffected by the rules of the association, and that plaintiff was equitably entitled to reimbursement out of the proceeds of the certificate. (Pp. 567–571.)

Error to the Court of Civil Appeals for the First District, in an appeal from Rusk County.

Kelly sued Searcy, guardian, and recovered judgment. Defendant appealed and judgment was reversed and rendered in his favor. Kelly thereupon obtained writ of error.

*J. W. McDavid* and *John R. Arnold,* for plaintiff in error.—The rules of the insurer have no place in determining the right of Kelly to reimbursement out of the proceeds of the policy, against the minors made beneficiaries by the will of Hart in accordance with law. Coleman v. Anderson, 86 S. W. Rep., 732; Cheeves v. Anders, 87 Texas, 292.

The contract under which Kelly reinstated and maintained Hart's policy, in no sense condemned by public policy, made Kelly a beneficiary of the proceeds of the policy. Schonfield v. Turner, 75 Texas, 324; Cheeves v. Anders, 87 Texas, 292; Coleman v. Anderson, 86 S. W. Rep., 732.

*Turner & Turner, for defendant in error.*—The suit, being for less than $1,000, exclusive of interest, might have been brought in the County Court. Const., art. 5, sec. 16; Rev. Stats., arts. 1155, 3097, 3102; Dwyer v. Bassett, 29 S. W. Rep., 815. In such case the decision of the Court of Civil Appeals is final. Rev. Stats., arts. 996, subd. 3, art. 940; Brown v. Cotes, 13 Texas Ct. Rep., 179; Gallagher v. Rahm, 88 Texas, 514.

The laws of fraternal orders, such as the Knights of Honor, and rules and regulations adopted by such order enter into and become a part of the contract of insurance and are binding on its members and all other parties dealing with them respecting such insurance. Acts 26th Leg., p. 129; Supreme Lodge U. B. A. v. Johnson, 10 Texas Ct. Rep., 299; Grand Lodge S. of H. v. Iselt, 37 S. W. Rep., 377; Order of Columbus v. Fuqua, 1 Texas Ct. Rep., 642.

BROWN, ASSOCIATE JUSTICE.—B. C. Kelly sued Searcy, as guardian of Thaddie and Preston Hart, minor children of T. L. Hart, deceased, to recover for moneys paid by the said Kelly in discharge of the assessments made upon a certificate of life insurance issued to the said T. L. Hart by the Knights of Honor. The certificate was for the sum of $2,000 and was made payable to his wife, M. Hart, and Theodore Hart, his brother, in equal amounts. The assessments were paid by Kelly under an agreement which was entered into between him and the beneficiaries and the said T. L. Hart as stated in the findings of fact by the trial court hereinafter copied. The case was tried before the judge of the District Court, who rendered judgment for Kelly in the sum of $1,361.78, which judgment the Court of Civil Appeals reversed and rendered judgment in favor of Searcy, as guardian. From the opinion of the Court of Civil Appeals we copy the following conclusions of fact filed by the district judge:

"On March 1, 1893, and for some time prior thereto, the Knights of Honor was a fraternal and benevolent association of persons having an established benefit fund from which, on the evidence of the death of a member of the order who has complied with all its lawful requirements, and is in good standing, according to the laws of the order, a sum not exceeding $2,000 is paid to a blood relative or person dependent on him, which may be designated by the member as a beneficiary. The Knights of Honor is such an order to the date of this trial.

"(2) That prior to March 1, 1893, T. L. Hart became a member of the Knights of Honor and there was issued to him by the said order

a benefit certificate or policy of insurance on his life in the sum of $2,000 payable at his death to his wife, M. Hart, and Theodore Hart, his brother, in equal amounts. That on February 17, 1893, and just a short time prior thereto, T. L. Hart was financially embarrassed and having no property of any consequence or money, and being unable to pay the dues and assessments necessary to keep in force the benefit certificate of insurance in said order, and having made repeated efforts for aid from his friends to pay the required dues and assessments of the order and failing to obtain the necessary money to pay same did not pay the dues and assessments on the benefit certificate and on account of the nonpayment of the dues and assessments the benefit certificate of insurance lapsed and was forfeited under the laws of the said order, which provided that upon the nonpayment of the dues and assessments the benefit certificate should lapse and be forfeited. However it was shown that a law of the order provided for reinstatement of the member within a year of such suspension for nonpayment. (4) At the period of the suspension of T. L. Hart he was over 60 years of age and by reason of his age could not obtain insurance from any other order, or this order, and being desirous of continuing the benefit certificate in force, and being reinstated in the order of Knights of Honor, said T. L. Hart approached B. C. Kelly, the plaintiff, and offered to have him pay the money required for reinstatement and thereafter to pay the required dues and assessments to keep the benefit in force, during the life of T. L. Hart, and to be reimbursed and paid out of the proceeds of the benefit certificate at the death of T. L. Hart. B. C. Kelly agreed to do so. Thereupon about March 1, 1893, the beneficiaries, M. Hart, Theodore Hart, B. C. Kelly and T. L. Hart, agreed that B. C. Kelly should furnish the money for the reinstatement, and thereafter pay all dues and assessments required and necessary to maintain the said benefit certificate in force during the lifetime of T. L. Hart, and that the said B. C. Kelly was to be reimbursed and paid out of the proceeds of the policy when collected at the death of T. L. Hart, and the policy to be delivered to B. C. Kelly as a pledge for such advancement. (5) That in pursuance of this agreement plaintiff procured the complete reinstatement of T. L. Hart and the benefit certificate in the order. Plaintiff thereafter regularly paid all dues and assessments required by the order, up to the very death of T. L. Hart, which occurred on February 17, 1903, amounting in the aggregate to the sum of $922.35. That at the death of T. L. Hart the benefit certificate was in force and payable, and the policy in control and possession of plaintiff. (6) That in the year 1901, Theodore Hart died leaving surviving him only intervener, Mrs. Jacobs, his daughter. M. Hart, wife of T. L. Hart, died in the year 1902. T. L. Hart at his death February 17, 1903, left surviving him Thaddie and Preston Hart, his daughters who are minor females. That about one month prior to the death of T. L. Hart he executed the codicil to his will which is fully set out in the petition, and which will and the codicil were duly probated in County Court of Rusk County, Texas. That the facts set out in the codicil were duly proved. (7) That after the death of T. L. Hart defendant duly and legally qualified as the guardian of the estate of Thaddie and Preston Hart and collected the benefit certificate on the life of T. L. Hart in sum of $2,000, and

that plaintiff delivered certificate for collection only. That after the defendant collected the policy he refused to pay plaintiff or recognize any right of plaintiff in the proceeds of the benefit certificate and refused to recognize or allow plaintiff's account notwithstanding plaintiff presented his itemized account to him for allowance. (8) That such laws of the order of Knights of Honor as defendant introduced are made a part hereof. The court further found that T. L. Hart left no estate subject to his debts."

From the opinion of the Court of Civil Appeals we also make the following extracts from the provisions of the constitution and bylaws of the Knights of Honor, which are pertinent to the issues presented in this case:

"Section seven of the charter: 'The said Supreme Lodge shall have power to create, hold and disburse the funds named in the object of the corporation, for promoting benevolence and relieving the sick and distressed. Under such constitution, laws and regulations as it has now adopted or may deem necessary to adopt; and said funds shall be exempt from execution, and shall under no circumstances be liable to seizure or appropriation by any legal or equitable process, or to any debt or debts of its living or deceased members, and said fund shall be exempt from the laws, rules and regulations governing the insurance bureau of this state.'

"Section two under article ten of said constitution as follows: 'No will shall be permitted to control the appointment or distribution of or right of any person to any benefit payable to this order; nor shall the member have any power to sell, assign or hypothecate his benefit certificate or change his beneficiaries in any way other than that prescribed by the laws of this order.'

"The following section of said constitution, article ten, section nine: 'When all beneficiaries designated by a member die before the decease of said member, if he shall not have procured another benefit certificate designating other beneficiaries in accordance with the requirements of section seven of this article, the benefit shall be paid to the widow and children of the deceased member, each sharing equally; if no widow, to his children; if no children to his widow; if no children nor widow, then to his heirs.' "

T. L. Hart died leaving a will, to which he added a codicil, from which we copy the following:

"I make this codicil to my last will and testament and will and bequeath that part of my said policy payable to my wife, who is now deceased, to my children, Thaddie Hart and Preston Hart. The other beneficiary named in my policy, Theodore Hart, who is my brother, having transferred his interest in said policy to one B. C. Kelly to keep up the dues and premiums on my said policy, having departed this life, I fully recognize all the payments and dues paid on my said policy by said B. C. Kelly and desire that he collect at my death all the money he has paid out on my said policy since the year 1891, together with the lawful rate of interest out of the amount of money collected on my policy at my death. I am fully conscious of the fact that B. C. Kelly has kept all the premiums and dues paid up on my said policy since

1891 out of his own individual means, and I wish him reimbursed out of the proceeds of my policy after my death."

Defendant in error has filed a motion to dismiss the writ of error, alleging that this court has not jurisdiction of the case. The motion is based upon the claim that the principal of the sum sued for is less than $1,000. If this be true, the motion must be sustained. The action was brought against Searcy, as guardian, to recover of him a part of the money he collected from the Knights of Honor on a certificate of insurance upon the life of T. L. Hart. The claim against Searcy is that Kelly was entitled to receive from Searcy of the money collected the sum of the payments made by Kelly to the Knights of Honor as premiums upon the policy, with interest upon those payments. The action is not brought to recover against Searcy interest as such upon the money that Kelly paid but to recover that part of the sum collected by Searcy to which Kelly was entitled. The character of the claim was illustrated by counsel in argument thus: If A owed B $900 by note bearing interest and the principal and interest exceeded $1,000, A could sue B in the District or County Court to recover the principal and the interest, and of that case this court would not have jurisdiction. If, however, A should place the note for $900 in the hands of C, an attorney, for collection and C should collect from B the principal and the interest, exceeding $1,000, but failed to pay it over to his client, then A could not maintain his action in the County Court against C but must sue in the District Court; hence this court would have jurisdiction. Searcy collected from the Knights of Honor the principal and interest of Kelly's claim on the fund. The motion to dismiss the writ of error is overruled.

The constitution, laws and rules of the Knights of Honor will govern in the settlement of all matters connected with the insurance between that order and the assured, the beneficiary or third persons, but transactions which have occurred and rights that have accrued between the assured or beneficiary and third persons must be adjudicated according to the law of the land. (Coleman v. Anderson, 86 S. W. Rep., 732.)

There is nothing in this transaction that is illegal; Kelly acquired no interest in the contract which was adverse to the interest of any of the parties. On the contrary, the agreement which he made with the beneficiary and the member neither impaired nor imperiled the rights of the beneficiary, nor the life of the assured; in fact, Kelly took the burden of Hart upon himself to preserve the insurance for the beneficiary, and, in performance of that contract, he paid out the sum claimed to preserve the certificate of insurance intact for those for whom it was intended. The contract comes within the rule of decision announced by this court in the case of Coleman v. Anderson, above cited. It is claimed, however, that because the beneficiary named in the certificate died before T. L. Hart, all rights which were acquired under the contract between Kelly and the beneficiary terminated. By the laws of the Knights of Honor, as copied in the statement above, upon the death of the wife and the other beneficiaries named in the certificate, the minor children of T. L. Hart, the wards of Searcy, became entitled to receive the sum specified in the certificate; they succeeded to the rights which had been expressed as belonging to the named beneficiaries and we are

of the opinion that having received the benefit of the contract made with the original beneficiary for the preservation of the certificate, through the payment of the installments which fell due at different times, the fund must be held liable to reimburse Kelly for the sums paid out to their advantage. (Schonfield v. Turner, 75 Texas, 324; Coleman v. Anderson, 86 S. W. Rep., 730; Connecticut Mut. L. Ins. Co. v. Burroughs, 34 Conn., 305, 91 Am. Dec., 725; Scobey v. Waters, 10 Lea (Tenn.), 563; Unity Assn. v. Dugan, 118 Mass., 221, 3 Am. and Eng. Ency. Law, 1030.)

In Insurance Company v. Burroughs, cited above, the facts are very similar to this case. The policy was made payable to the wife and was given upon the life of her husband. It was expressed that in case the wife should die before the husband the policy should be payable to her minor children. In her lifetime she made an assignment of the policy to a party who undertook to pay the premiums as they accrued. The wife died before her husband and the assignee of the policy continued to pay the premiums until the death of the assured when the money was paid to the guardian of the minor children. Suit was brought by the assignee to recover the sum paid and the court held that although the title of the assignee to the policy terminated with the death of the wife, yet the right to be reimbursed for the moneys paid out in the preservation of the contract survived and the assignee was entitled to receive out of the fund collected by the guardian the sums that he had paid out as premiums with interest thereon.

If the beneficiary and the member had joined in making an assignment of the policy to Kelly it would have been void, because that would have put Kelly in the attitude of being interested in the death of the assured, yet if he had paid the premiums upon the policy, just as he has done under this lawful contract, and the guardians of the minors had collected the money as they have done here, unquestionably Kelly would be entitled to reimbursement for all that he paid out in good faith for the protection of the rights of these parties although his contract would be void and would not support a claim for the principal of the policy. Can it be contended that a court of equity would accord protection to one who acted under a void assignment but would decline to protect him who acted under a lawful contract for the accomplishment of the same purpose? We are of opinion that the equities are even stronger in the case before the court than in the cases we have cited. Our conclusion in this case is so admirably expressed in Coleman v. Anderson, above cited, that we quote the following: "In the present case there has been no attempt by the contract to divest the interest of the existing beneficiaries or to restrict the rights of the member. The contract was made only for the purpose of preserving their rights by the performance of the conditions on which they depended. The money necessary for that purpose has been paid by defendants and those whose rights they have, and they are entitled to insist on their rights under the contract through which this was accomplished."

It is ordered that the judgment of the Court of Civil Appeals be reversed and that the judgment of the District Court be affirmed.

*Reversed and judgment of District Court affirmed.*