## SOVEREIGN CAMP W. O. W. v. DICKEY.

No. 31449. April 29, 1947.

*180 P. 2d 186.*

Brown Moore and Guy Horton, both of Stillwater, for plaintiff in error.

Leon J. York and Robert L. Hert, both of Stillwater, for defendant in error.

ARNOLD, J. This is an action by Delia M. Dickey against Sovereign Camp of the Woodmen of the World to recover on a certificate of insurance issued to Ralph W. Dickey. Judgment for plaintiff, and defendant brings error.

An examination of the record in this case discloses that on July 11, 1929, defendant issued to Ralph W. Dickey its beneficiary certificate No. RT-898323-L, by the terms of which it insured his life for the sum of $2,000 payable upon his death to his wife, Delia M. Dickey; that on the 17th day of November, 1932, Ralph W. Dickey, joined by his wife, the plaintiff herein, assigned this policy to the First National Bank of Stillwater, said assignment purporting to be an absolute transfer of the beneficiary certificate; the bank immediately sent to the defendant at its home office in Omaha, Neb., the assignment and requested information as to whether its form was acceptable to the society; that at the time of this assignment Ralph W. Dickey was indebted to the bank in the sum of $100, and subsequent thereto became further indebted to the bank in the sum of $75, and that thereafter at the maturity of these notes a new note was executed by him for $175 to extend the maturity date of his indebtedness; that on April 18, 1940, the bank, by letter to the home office of the society, canceled the beneficiary certificate so assigned to it and made application for, and subsequently received, cash surrender value thereof, which amounted to $58.95; Ralph W. Dickey died November 3, 1940, and on May 12, 1941, proof of death was made to the society and upon demand for payment of the amount due under the beneficiary certificate payment was refused and this action resulted.

After the issues had been joined the case was tried to the court without intervention of a jury upon a stipulation of facts filed in the case. By the stipulation of facts it was agreed between the parties that if there was liability of the society, the amount of its liability, less items of indebtedness chargeable against the certificate, would be $1,569.29. Judgment was rendered for the plaintiff for this amount.

In its petition in error defendant has made seven assignments, but these are presented in its brief under three propositions as follows:

"The assignment of the policy by the insured and beneficiary to the First National Bank of Stillwater, Oklahoma, is not prohibited by either the laws of the State of Oklahoma, or by the constitution and by-laws of the defendant."

"The surrender of the life insurance policy by the First National Bank to the defendant was legal and valid."

"The plaintiff is estopped to question the validity of the assignment."

We do not consider it necessary to discuss these propositions separately and in detail for the reason that the only material question to be determined is whether, under the applicable statute of this state and the constitution and by-laws of the society made a part of this contract, the insured could validly assign the benefits payable under the beneficiary certificate to the First National Bank of Stillwater, and whether that bank could validly authorize the cancellation of the beneficiary certificate by the society and receive the cash surrender value thereof.

The assignment involved and executed by the insured and the named beneficiary, his wife, reads as follows:

"For value received, I hereby sell, assign, transfer and set over to The First National Bank, Stillwater, Oklahoma, the policy of Insurance known as No. RT 898323-L date July 1, 1926, issued by the Woodmen of The World, Omaha, Nebr., on my life to be theirs absolutely, together with all benefits and advantages granted to me, the insured, under said policy, including the choice of my option under the nonforfeiture options of the said policy and the exclusive right to receive and receipt for the proceeds of said policy when available, and I hereby guarantee the validity and sufficiency of the fore-

going assignment and the same will forever warrant and defend.

"Witness my hand and seal at Stillwater, Oklahoma, this 17 day of September, 1932."

This instrument on its face purports to be an absolute assignment and transfer of the beneficiary certificate to the First National Bank.

The constitution and by-laws of the society are made a part of the beneficiary certificate by reference. Section 3 thereof, so far as its language is material to be considered here, reads:

"The object of this Society shall be to . . .; create funds from which, on reasonable and satisfactory proof of death of a beneficiary member who has complied with all the requirements of this Society, there shall be paid the sum named in the certificate, less any sums due the Society, to a person or persons named in the certificate as beneficiary or beneficiaries, which beneficiary or beneficiaries shall be such as are not prohibited by the laws of the state in which the original certificate is delivered to the applicant."

Our Legislature has provided specifically for the organization, operation and control of fraternal benefit associations in 36 O. S. 1941 §§ 271-292. With reference to the persons or classes of persons who may receive death benefits from such associations, it is provided in section 271, Id., as follows:

". . . Benefits in case of death of members shall be paid to the families, heirs, blood relatives, affianced husband or wife or to the person dependent upon the member or be used for the payment of the last sickness and funeral expenses of the members all in accordance with the constitution and by-laws of the association. All other benefits, aids and reliefs shall be paid as authorized or directed by the constitution and by-laws of the association."

This language and the quoted language from section 3 of the society's by-laws show that the provisions are complementary to each other. While the persons or classes of persons enumerated in section 271, Id., are those entitled to receive death benefits, any implied authority to others than those enumerated to receive the other benefits mentioned in the section, such as the cash surrender value of a certificate, must be considered, we think, to be limited to the enumerated persons or classes, for otherwise the payments of other benefits would result in a destruction of the certificate itself, which is intended for the benefit of those enumerated. Other benefits payable and receivable during the lifetime of the insured are payable to and receivable by him and he only has the right to terminate the contract of which the other benefits named in the statute are mere incidents. That our Legislature so intended finds reasonable support in the language of section 283, Id., which provides that:

"The money or other benefit, charity, relief or aid to be paid, provided or rendered by *any* association authorized to do business under this article, . . ."

—shall not be subject to any legal process for the enforcement of claims against the insured and evinces a legislative policy and intent to forbid that to be done indirectly which it has prohibited to be done directly. This purpose and intention of the Legislature, we think, is broad enough to cover any voluntary act on the part of the assured and a creditor to evade the obvious purpose of the Legislature in the enactment of these two sections.

If we look to the contract itself and to the constitution and by-laws, together with our statutory provisions, all of which are a part of the contract, we can find no authority for the cancellation of a beneficiary certificate and the collection of its cash surrender value by any person not within the enumeration in section 271, Id.

Section 57, paragraph 11, of the constitution and by-laws of the society, with reference to the manner in which application for the cash surrender value of a beneficiary certificate shall be made, reads as follows:

"Application by a member for cash surrender value, extended insurance or paid-up insurance, as provided for in his benefit certificate or in the constitution, laws and by-laws of the Society, must be made in writing; and said certificate must be delivered to the Secretary of the Society at its Home Office at Omaha, Nebraska. Receipt by the Secretary of the benefit certificate and the written application of the member for cash surrender value, extended insurance or paid-up insurance is a condition precedent to any liability of the Society therefor; and the delivery of such application and benefit certificate to a local Camp, or to a Financial Secretary, or to any person other than the Secretary of the Society shall not be deemed to be delivery to the secretary and shall not be binding upon the society."

It is true that this language purports to state the things which the applicant for a cash surrender value must do and the manner in which they are to be done in order to bind the society, but it is not intended as a shield, nor can it be so used by the society, to protect it from liability in the event of wrongful cancellation of the beneficiary certificate. The bank in making application for cancellation of the beneficiary certificate and for payment of the cash surrender value thereof did not purport to act as the agent of Ralph W. Dickey, but claimed to act in its own right. We think it had no such right. The only way in which such right could be vested in the bank would be for it to be designated as beneficiary or to be a member of the society holding such certificate, both of which are forbidden by section 271, Id. If the beneficiary certificate had not been canceled by direction of the bank, the cash surrender value would have been available, and more than sufficient, to keep the certificate in force until Dickey's death under the automatic premium payment provisions thereof. Equitable estoppel cannot arise under these circumstances.

No decision by this court has been called to our attention, nor have we found any, touching a fact situation similar to that here presented. In other jurisdictions having statutory provisions comparable to those contained in sections 271 and 283 holdings of other courts have been consonant with the conclusion herein reached, and in those cases, where the by-laws of the society prohibited assignment of the benefits, the courts have held that such provisions are merely in line with the public policy announced in the statutes.

See Ginsberg v. Butler, 217 Cal. 467, 19 P. 2d 790, 92 A.L.R. 906; Carson v. Vicksburg Bank, 75 Miss. 167, 22 So. 1; Aiken v. Massachusetts Benefit Ass'n, 13 N.Y.S. 579; Van Bibber v. Van Bibber, 82 Ky. 347; Unity Mutual Life Assurance Ass'n v. Dugan, 118 Mass. 219; United Mutual Life Insurance Co. v. Ward, 201 Minn. 70, 275 N. W. 422; Stoelker v. Thornton, 88 Ala. 241, 6 So. 680; Schonfield v. Turner, 75 Tex. 324, 12 S. W. 626.

Judgment affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY and OSBORN, JJ., concur. BAYLESS, WELCH, CORN, and GIBSON, JJ., dissent.