PATRICK D. SAGE, Respondent, v. ALEXANDER
FINNEY, Appellant.

St. Louis Court of Appeals, March 21, 1911.

1. LIFE INSURANCE: Insurable Interest. A person may insure his own life, paying premiums thereon himself, in favor of another, who has no insurable interest therein.

2. ———: ———: Wagering Policy. Where insurance is procured with the consent of the insured in favor of one who has no insurable interest, but who undertakes to pay the premiums therefor, it is a wagering contract, obnoxious to public policy, though not unlawful in the sense that it is immoral.

3. ———: ———: ———: Rights of Beneficiary. Where insurance is procured with the consent of the insured, in favor of one without insurable interest, such agreement, though obnoxious to public policy, in so far as it purports to give the beneficiary any precise or definite amout of the insurance without regard to the amount of the indebtedness which the insured may owe him or .to the premiums and interest thereon which he may have invested under the agreements, affords him equitable rights to the proceeds of the insurance, to the extent of compensating the indebtedness, if any, existing in his favor against the insured, together with such premiums as he has expended in keeping the insurance in force and interest thereon.

4. FRATERNAL BENEFICIARY ASSOCIATIONS: Insurable Interest: Statutory Restrictions not Retroactive. Section 7119, Revised Statutes 1909 (Laws 1897, p. 132), pertaining to benefit societies, and providing that no contract under which a beneficiary may pay a member's assessments shall give the beneficiary a vested right in the benefit certificate, is without effect upon the accrued rights of an insured and his beneficiary without insurable interest, under a contract made in 1894.

5. LIFE INSURANCE: Payment of Premiums by Volunteer. Where a mere volunteer, without any contract with insured touching the matter, pays premiums on assessments, no equity arises in his favor to be compensated out of the fund.

6. ———: Payment of Premiums Under Contract: Rights of Payer. Where a party, without insurable interest in a certificate of insurance, makes a contract with the insured and with the insurer to pay the assessments and dues thereon for an agreed part of the proceeds, his rights are those only given by the contract.

7. ———: ———: ———: Estoppel: Accepting Benefits of Invalid Contract. A member of a mutual benefit society, being unable to pay his dues, surrendered his certificate for $2000, with the consent of the society, and a new certificate was issued, payable to defendant, who had no insurable interest in the life of the insured, in consideration of, and under, a written agreement that defendant should pay the dues and assessments of the insured until his death, and should then receive $1000 out of the proceeds, and should act as agent of the insured's grandson in collecting and paying over to him the remaining $1000 of the insurance. The defendant, under this agreement, paid dues and assessments to the death of the insured, amounting to $1400, which, with interest to trial, amount to $1800; and in a proceeding to distribute the proceeds, which had been paid into court, defendant stipulated with the insured's grandson for an absolute award of $1000 and asserted a claim to the remaining $1000. *Held*, that while defendant's contract was invalid, his only equities accrued under it, and that he could not claim rights under it, without accepting it *cum onere*, and that he was estopped from inconsistently repudiating the limitation as to the amount to which he was entitled.

8. ESTOPPEL: Invalid Contract: Acceptance of Benefits. While an invalid contract affords no ground for an estoppel, unless it has been fully executed, one may not claim under and against the same deed; and one who has appropriated to himself rights that accrue alone from a contract is estopped to assert that the contract is invalid and to deny its efficacy with respect to the rights of an adversary.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin,* Judge.

AFFIRMED.

*Frank K. Ryan* for appellant.

(1) An agreement between an insured person and a proposed beneficiary that the latter shall have the proceeds of the insurance, or any fixed part thereof, in consideration of his paying the insured's premiums or assessments, the beneficiary having no insurable interest in the life of the insured, is against public policy as a wagering contract; but where the agreement is not tainted with fraud, such beneficiary is entitled to reim-

bursement for the amounts so expended by him, with interest thereon. Singleton v. Insurance Co., 66 Mo. 63; Whitmore v. Supreme Lodge, 100 Mo. 36; Masonic Ass'n v. Bunch, 109 Mo. 560; Heusner v. Insurance Co., 47 Mo. App. 336; Insurance Co. v. Richards, 99 Mo. App. 88; Strode v. Meyer Bros., 101 Mo. App. 627; Mandeville v. Mackey, 88 Hun 132; Helmetag's Adm'r v. Miller, 76 Ala. 183; Cawthorn v. Perry, 76 Texas 383; Beard v. Sharp, 100 Ky. 606; Brett v. Warnick, 44 Ore. 511; Quinn v. Catholic Knights, 99 Tenn. 80; Bendet v. Ellis (Tenn.), 111 S. W. 795; Carmack v. Lewis, 15 Wall. 643; Warnock v. Davis, 104 U. S. 775.    (2) A beneficiary in a fraternal insurance certificate has no vested interest in same, and the insured may change his beneficiary at will, subject to the by-laws of the society. A beneficiary who agrees to pay and does pay all dues and assessments in consideration of an interest in the insurance, acquires only a right to reimbursement out of the proceeds of the policy which he has kept alive. This was the law before the Act of 1897 (R. S. 1909, sec. 7119), which expressly forbids such agreements. The agreement in the case now before the court was made prior to 1897, and that act, therefore, has no application here.    Grand Lodge v. McFadden, 213 Mo. 269; Supreme Council v. Heitzman, 140 Mo. App. 105; Masonic Ben. Ass'n v. Bunch, 109 Mo. 560.    (3) A contract bad in its inception as being against public policy, does not acquire validity by lapse of time; nor does its validity depend upon results or the accident of death.    If not lawful in its inception, it can never become so.    Ulrich v. Reinoehl, 143 Pa. 238; Denning v. Yount, 62 Kan. 217; Handy v. Globe Publishing Co., 41 Minn. 188; Murrell v. Jones, 40 Miss. 565; Woods v. Armstrong, 54 Ala., 150; Grand Lodge v. McFadden, 213 Mo. 269.

*Frederick W. Imsiepen* and *Chester H. Kern* for respondent.

(1) Under the contract between Patrick D. Sage and defendant order entered into in the year 1881 he became vested with a valuable property right to appoint his wife Catherine and his grandchildren to take one-half of the benefit fund, and to convey to defendant Finney by contract an expectancy interest in the other half of the benefit fund, and this right was absolute until abridged by the law of 1903, whereby the right of appointment is restricted to members of the family, kindred or dependents of the insured member of a fraternal order. And such expectancy interest became a vested interest by the terms of said contract between Sage and Finney upon the death of Sage, by operation of law, where Sage at no time prior to his death exercised the right of substitution. Royal Arcanum v. Effie Heitzman, 140 Mo. App. 105; Bacon on Ben. Soc. (3 Ed.), 1904, p. 531, par. 237; Hysinger v. Supreme Lodge K. L. of H., 42 Mo. App. 627; Lisaght v. Stone Masons, 55 Mo. App. 538; Froelich v. Musicians' Ass'n, 93 Mo. App. 383; Smith v. Mut. Ben. Soc., 123 N. Y. Sup. 932; Leaf v. Leaf, 92 Ky. 167; Bacon on Ben. Soc., (3 Ed.), 295; Supreme Council v. Murphy, 55 Atl. 497; Conselyon v. Supreme Council, 38 N. Y. Sup. 248; Grumbley v. Harold, 125 Cal. 24; Goodrich v. Bohan, 52 S. W. Rep. 1105; Bernard v. Grand Lodge, 13 So. Dak. 132. (2) Neither the fraternal orders nor the State can abridge the essential rights of the member existing under the law and the contract entered into between the member and the fraternal order at the time when the member exercises his right of appointment or substitution of a beneficiary. Morton v. Supreme Council, 100 Mo. App. 76; Rheinhold v. Kerrigan, 85 Mo. App. 256; Elsea v. Prior, 87 Mo. App. 157; Huff v. Woodmen, 85 Mo. App. 96; Collins v. German Ass'n, 84 Mo. App. 555; Leete v.

Bank, 115 Mo. 184; St. Charles v. Hackman, 133 Mo. 634; Ellerbe v. Ben. Ass'n, 114 Mo. 501; State ex rel. v. Greene, 78 Mo. 188. (3) Finney attempts to renounce his appointment made lawful by the terms of the charter. It was enough that Finney knew that Sage, the insured member , to whom he made the representations contained in the agreement, would rely and act on it as true; and that the latter has relied and acted on it, so that to permit Finney to deny its truth will operate as a fraud. Stevens v. Ludlum, 13 L. R. A.; 2 Pom. Eq. Jur. 239; 2 L. R. A. Dig. 1203.

NORTONI, J.—This is a suit in equity upon and for the reformation of a benefit certificate, and, as to defendant Finney, to the end, as well, of restraining him from collecting the entire fund vouchsafed in the certificate. Defendant, Supreme Council, answered by way of a bill of interpleader, asserted it was a mere stakeholder of the fund of $2000 and that both plaintiff and its co-defendant, Finney, claimed portions thereof. It therefore prayed permission to pay the fund into court and that the court require the parties to litigate the matter between themselves. After the Supreme Council was discharged in accordance with its prayer, the court found the issue for plaintiff, and defendant Finney alone prosecutes the appeal.

It is unnecessary to determine whether the case is properly one of interpleader as the two claimants, plaintiff and defendant Finney, agreed it was and stipulated that the court should discharge defendant Supreme Council upon its paying the fund into court and permitting them to litigate their claims thereto. The controversy in the cause, therefore, relates alone to the claim of plaintiff pertaining to $1000 of the insurance money and the claim of defendant Finney to nearly or about all of the same amount, for, by the same stipulation above mentioned, it was agreed that Finney should have $1000 of the fund on which plaintiff made no claim

whatever. So it is, though $2000 were paid by the Supreme Council in extinguishment of the insurance certificate, but $1000 thereof is involved here; the other half having been paid to defendant Finney under the agreement of the parties.

The facts out of which the controversy arises are as follows: The Supreme Council of Catholic Knights of America was in 1881, and has at all times since been, a mutual benefit society doing business in this state and plaintiff's grandfather, Patrick D. Sage, was a member of that order. In 1881, Patrick D. Sage became a member of the order referred to and it issued to him his certificate of insurance, payable at his death to his wife, Catherine Sage, in an amount of $2000, but stipulated that the beneficiary therein might be changed at any time in accordance with the directions of the insured. Sage paid all of the assessments and dues thereon for a period of some thirteen years, until 1894, when, because of advancing years and decrepitude, he found himself unable to conveniently further continue such payments. Defendant, Alexander Finney, was a member of the same order, and it appears that he and Sage belonged to the same local council No. 99 in the city of St. Louis. Upon Sage finding it inconvenient to further continue payment of his assessment and dues, he entered into an arrangement with defendant, Finney, to the effect that Finney should assume and discharge that duty until his death and receive $1000 of the proceeds of the insurance thereafter. In accordance with this arrangement, Sage surrendered his benefit certificate to the local council No. 99, of the order of which the two parties were members, and directed that a new one for the full amount of $2000 be issued payable to defendant Alexander Finney. But, as part of this transaction and in consideration thereof, Finney agreed that he would act as agent for Catherine Sage, the wife of the insured, and in event of her prior death, then as agent for this plaintiff, in collecting $1000 of such insurance and in paying

it over immediately to the wife of the insured, if living, and if not, to the plaintiff grandson. It may be said here that, though defendant Finney was in no way related to the insured and was otherwise wholly without an insurable interest in his life at the time, the constitution and laws of the Supreme Council of Catholic Knights in no respect required the beneficiary to have an insurable interest in the life of the member. In other words, so far as the order is concerned, defendant Finney was a competent beneficiary and the parties acted upon this theory. It appears that the entire arrangement as to substituting Finney as the beneficiary in the certificate in consideration of his paying all future assessments and dues thereon and, as agent, collecting and paying over $1000 of the insurance to the insured's wife, if living, if not, then to plaintiff, was had with the knowledge and consent of the order, for the local lodge, council No. 99, voted upon and approved it. Furthermore, it appears the new certificate for $2000, payable to Finney, together with the written agreement executed between him and Sage, the insured, to the effect that he would pay all assessments and dues, collect the $2000 and pay $1000 thereof to Catherine Sage, the wife of insured, if living, if not, then to his grandson, the plaintiff, was deposited with and held by one Woods, the secretary of such council, who, according to the agreement, was to retain the same until the death of Sage, the insured. The purpose of the parties was thus communicated to the order on August 19, 1894, on which date the insured surrendered his old certificate with proper directions and requested the issue of a new one for $2000, payable to defendant Alexander Finney. But the order did not comply with the request and issue the new certificate until Finney had first executed a writing, by which he agreed with Sage, the insured, that in consideration of his being so made the beneficiary in the new certificate to be issued, he would pay all assessments and dues thereon and retain but $1000 of the

fund when it was collected after the insured's death, and as agent collect and pay over to Catherine Sage, the insured's wife, or in event of her death, his grand-son, this plaintiff, $1000 thereof. Upon such agreement being executed by Finney to Sage, the insured, and its delivery to Woods, the secretary of local council No. 99, to be held until the entire matter was consummated by the death of Sage, the order proceeded to further consider the matter, and issued the new insurance certificate, payable to Finney as beneficiary. This certificate was issued by the order on September 5, 1904, and countersigned and delivered by the local officers of council No. 99 the following day, September 6, 1904, whereupon it, too, was given into the possession of Woods, the secretary, to be held by him between the parties until the event should occur on which it became payable according to the terms of the entire agreement manifested by the writing of August 29th and the certificate itself. Mrs. Catherine Sage, the wife of the insured, departed this life a few years thereafter and, therefore, under the terms of the agreement, all rights which might otherwise have been vested in her by the death of her husband have accrued to this plaintiff. In accordance with the agreement, Finney paid all of the assessments and dues until the date of the death of the insured, which occurred but recently. The first few years the assessments amounted to $1.15 per month and then for a short time to $2.40 per month but, because of the heavy death rate in the order, were thereafter advanced to $16.36 per month. The membership dues were $5 per year during the whole period and at the time of the death of the insured, Finney had paid in dues and assessments to the order nearly $1400. It is said that, at the time of the trial, dues and assessments paid by Finney on the insurance together with interest calculated thereon at six per cent amounted in all to about $1800. After the death of Patrick D. Sage, the insured, Finney obtained possession of the certificate and, notwithstanding

his agreement to accept $1000, asserted a claim to a sufficient amount of the fund to reimburse him for all dues, ·assessments and interest thereon which he had expended in order to maintain the insurance in force. Because of such assertion on his part, plaintiff instituted this suit against both the Supreme Council and Finney, praying the court to reform the certificate by declaring him a beneficiary therein to the extent of $1000 and to restrain Finney from asserting a claim to the contrary.

The bill seems to proceed upon the theory the contract of August 29, 1894, by which Sage and Finney agreed that Finney should collect the entire fund and pay $1000 to plaintiff was the last clear manifestation of the intention of the insured as to who should be the beneficiary of so much of his bounty and that as it was fully known and accepted by the order, in requiring such writing to be deposited with the secretary of its local council, the court will effectuate such intention by reforming the certificate and declaring plaintiff a beneficiary for one-half the amount thereof. It is unnecessary to examine this feature of the case or to express an opinion thereon, as defendant, Finney, does not combat the theory suggested, but asserts, notwithstanding, he has a clear right to be compensated to the extent he paid the dues and assessments and for accumulated interest thereon because of the superior and better equities which prevail in his favor. The argument advanced by. Finney is, that though he was a competent beneficiary under the laws of the order at the time the contract was made and though it was made in good faith by both parties, it is nevertheless wholly void as against public policy, for the reason he is a stranger without any insurable interest in the life of the deceased, and the contract is, therefore, ineffectual in so far as it purports to limits his right to $1000 of the fund.

While one may insure his own life, paying premium thereon himself, in favor of another who has no insurable interest therein, as was said in Locher v.

Kuechenmiester, 120 Mo. App. 701, 720, 98 S. W. 92, it
is true the law looks with disfavor upon such transac-
tions as this, where the insurance is procured with the
consent of the insured but in favor of one with no in-
surable interest, who undertakes to pay the premiums.
therefor, and denounces them as wagering contracts.
Though such contracts are obnoxious to public policy,
because they tend to encourage one to hasten the event
upon which the insurance depends, they are not unlawful.
in the sense that they are immoral nor as is a contract
which stipulates for the doing of something prohibited
by a positive statute. In this view, the courts accept
such contracts as sufficient to give rise to equities be-
tween the parties which they will consider and apply,
to the end of compensating one who has invested his
means in good faith for the purpose of keeping the in-
surance in force. Indeed, the rule of decision with re-
spects to such contracts seems to be that they are void
only in so far as they purport to confer a right upon
one, who has no insurable interest in the life of another,
to the insurance over and above the amount of the in-
debtedness of the insured person to the beneficiary and
such premiums and interest thereon as may have been
paid on the policy by the beneficiary. It is said, al-
though such contracts are invalid in so far as they at-
tempt to transfer all or any precise amount of the in-
surance above the indebtedness of the insured to the
beneficiary and beyond such premiums and interest as.
the beneficiary may invest therein, they are not of that
fraudulent kind with respect of which the courts regard.
the parties equally culpable and refuse to interfere with
the result of their action. In other words, such con-
tracts, though considered and treated as invalid be-
cause obnoxious to public policy in so far as they pur-
port to give the beneficiary any precise or definite
amount of the insurance without regard to the amount,
of the indebtedness which the insured may owe to the
beneficiary or the premiums and interest thereon which

the beneficiary may have invested therein, are always treated with as sufficiently efficacious to afford the beneficiary an equitable right to the insurance money vouchsafed in the policy to the extent of compensating the indebtedness, if any, existing in his favor against the insured together with such premiums and interest as he has expended in keeping the insurance in force. [Warnock v. Davis, 104 U. S. 775; Mut. Life Ins. Co. v. Richards, 99 Mo. App. 88, 72 S. W. 487; Strode v. Meyer Bros. Drug Co., 101 Mo. App. 627, 74 S. W. 379; Quinn v. Catholic Knights, 99 Tenn. 80, 41 S. W. 343.]

However, our statute, Section 7119, Revised Statutes 1909, pertaining to benefit societies provides that no contract under which a beneficiary may pay the member's assessments shall give the beneficiary a vested right in the benefit certificate; but be this as it may, the statute is without influence here for it was enacted in 1897, Laws of Missouri, 1897, p. 132, and the rights of these parties, whatever they are, accrued in 1894.

In view of the fact that the writing between Finney and Sage, of date August 29, 1894, stipulates a definite sum of $1000 as the amount payable to the latter in consideration of his paying the future dues and assessments, it is argued for him that the entire contract with respect to that matter is void as against public policy and, therefore, no more operates a limitation upon his right to recover beyond that amount than it did upon the right of Catherine Sage, had the insured died within a few days thereafter, to recover the entire insurance, less such premiums and interest thereon as he had paid at the time. It is insisted that because he was induced to invest his means in paying the dues and assessments under such invalid contract while acting in the utmost good faith, the precepts of natural justice alone require that he should be recompensed from the fund which he thus maintained until maturity; for, it is said, though the contract be void at law, it is nevertheless sufficiently valid as a basis for the accrual of

equities which the court will reckon with and declare, under the rule of the authorities cited, and he is not estopped to assert them by the obnoxious limitation in the contract fixing his interest at $1000, as a void contract may not be invoked for the purpose of an equitable estoppel unless it has been fully executed by both parties. The argument is not entirely sound, for it omits to reckon with the fact that Finney essentially bases his claim upon the contract with Sage by which he undertook to pay the dues and assessments, and at the same time repudiates the limitation therein prescribing his right to be $1000. Had plaintiff paid the dues and assessments as a mere volunteer, without any contract with Sage touching that matter, no equity would arise in his favor to be compensated out of the fund. It is only because of the contract with Sage that plaintiff may assert any right whatever with respect to any portion of the insurance vouchsafed in the certificate. [Jory v. Sup. Council Am. Leg. Honor, 105 Cal. 20, 30.] This being true, plaintiff essentially claims under the contract which definitely fixes his right to $1000 and no more, and it is conclusively presumed that, but for such limitation, Sage would never have entered into the arrangement at all. The contract is an entire one and not divisible, but nevertheless invalid in so far as it purports to determine the right of Finney to $1000 of the fund, notwithstanding the amount of dues and assessments he paid. It is neither immoral nor illegal in the sense that it is forbidden by statute and it was therefore entirely competent and proper for Finney to agree and to actually pay the dues and assessments. So much of the arrangement was valid and Finney asserts this to be true, as he must, when he predicates what he terms his superior and better equity over plaintiff thereon in declaring a right to compensation to the extent he paid dues and assessments under the contract. [Warnock v. Davis, 104 U. S. 775.] It is therefore obvious that Finney claims a right accruing to him under the contract

in so far as it is valid and repudiates only the limita-
tion therein which is obnoxious to public policy.

Though it be that an invalid contract affords no
grounds for an estoppel unless it has been fully ex-
ecuted by the parties, it is true as well that one may
not both claim under and against the same deed. One
may not appropriate to himself rights, such as the
equities asserted here, which accrue alone from the con-
tract and at the same time deny the efficacy of the under-
taking with respect to the rights of an adversary. If
a person predicate his cause, as does Finney here, on a
right accruing to him under a contract, he is estopped
from denying such portions thereof as are against his
interest and this is true though such portion be invalid,
for he must take it *cum onere* or not at all. He is es-
topped from assuming such inconsistent positions. For
an application of the principle where one has accepted
the benefits of an invalid contract, see Morris v. Hall,
41 Ala. 510, 536, 537. In Robinson v. Pebworth, 71 Ala.
240, 247, the doctrine is stated to be that though the
transaction is illegal one may not claim both under
and against the same title. So where one accepts the
benefits of an invalid mortgage, it is determined that
he is estopped to thereafter assert its invalidity. [Hor-
ton v. Davis, 26 N. Y. 495.] The identical principle finds
application too and is illustrated in numerous instances
where it appears persons have accepted benefits under
invalid judicial proceedings, for it is said they may not
thus accept the benefits of the judgment and dispute its
validity. One must not be inconsistent in the positions
he assumes and if he claims the benefits of such invalid
proceedings, he is thereafter estopped to assert their in-
validity. [Hoffmire v. Holcomb, 17 Kan. 378; Babitt
v. Corby, 13 Kan. 612; Pursley v. Hays, 17 Iowa 310;
Lee v. Gardiner, 26 Miss. 521.] For applications of
the general principle to one claiming both under and
against the same deed, see Jacobs v. Miller, 50 Mich.
614, 615; Swanson v. Tarkington, 7 Heisk. (Tenn.) 612,

614, 615. To the same effect see Bigelow on Estoppel (5 Ed.) 684; Herman on Estoppel, secs. 1040, 1039; see also Board Supervisors v. Allen, 99 N. Y. 532. As above stated, Finney has already received $1000 of the fund; for upon the Supreme Council paying the $2000, $1000 thereof was awarded to him under a stipulation and plaintiff made no claim whatever thereto. Besides accepting benefits to that extent under the contract after suit was instituted, plaintiff predicates his entire right with respect to the greater portion of the $1000 now in court on equities accruing out of the contract, and so doing, he is estopped to assert the invalidity of the limitation therein prescribed fixing his interest at $1000.

The judgment should therefore be affirmed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.