12502

EX PARTE FANT, RECEIVER, *ET AL.*
LEE v. ALLAN *ET AL.*

(145 S. E., 34)

June, 1927.

*Messrs. Hagood, Rivers & Young, Julian Mitchell,* and *Ernest L. Visanska,* for appellants.

*Messrs. Simeon Hyde, Jr.,* and *John J. Murray,* for respondents.

September 27, 1928.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an appeal from an order of his Honor, Judge Sease, issued in the main cause of Robert E. Lee, as a depositor, in behalf of himself and all other depositors of the South Carolina Loan & Trust Company, against the stockholders of that bank, to enforce their statutory liability. The order appealed from was upon the petition of A. S. Fant, Receiver of the bank and the Mortgage Loan Company (whose connection with the matter will be explained). It sought to have enjoined the prosecution of the action which Lee had brought. His Honor, Judge Sease, dismissed the petition and discharged the rule to show cause, and from this order the Receiver and the Mortgage Loan Company have appealed.

The somewhat complicated details of the matter appear to be as follows:

On December 16, 1926, there were in operation three affiliated banking institutions in the City of Charleston: (1) The South Carolina Loan & Trust Company; (2) the Security Corporation, formerly the Security Savings Bank, a subsidiary corporation of the South Carolina Loan & Trust

Company; and (3) the South Carolina Loan & Trust Company's Bank, a corporation largely owned and entirely controlled by the South Carolina Loan & Trust Company. On the day mentioned, all three institutions, closed their doors and were placed in the hands of A. S. Fant, the State Bank Examiner.

On January 12, 1927, after an advertised call by certain of the depositors of all three of the institutions, a largely attended meeting of the depositors was held. The committees from the depositors of the South Carolina Loan & Trust Company and the South Carolina Loan & Trust Company's Bank were appointed, with power to investigate any offer that might be made looking to the prompt liquidation of the affairs of the South Carolina Loan & Trust Company, to approve or disapprove the same on behalf of the depositors, and to take such action as might be deemed expedient for the best interests of the depositors.

On January 13, 1927, the South Carolina National Bank, entirely disconnected from any of the institutions in trouble, submitted an elaborate proposition to the committees for the liquidation of the several corporations. The plan recognized the fact that the assets consisted of items of such different characteristics as to require different methods of handling, in order to secure an orderly liquidation and one without sacrifice. They consisted of real estate, real estate mortgages, commercial loans, individual loans, cash, bank balances, bank buildings, and miscellaneous items. The proposition accordingly was that the South Carolina National Bank would take over certain liquid assets of the institutions and immediately pay to the stockholders of the South Carolina Loan & Trust Company and of the Security Corporation 25 per cent. of their deposits, and to the stockholders of the South Carolina Loan & Trust Company 51½ per cent. of their deposits.

In reference to what has commonly come to be designated as "frozen" assets, the proposition was that there be organized a corporation to be known as "the Mortgage Loan

Company," to which these assets should be assigned. The capital stock of that corporation was to be $150,000, $100,-000 of which was to be subscribed and paid for by Henry H. Fickon, then president of the three corporations in liquidation, "in full settlement and discharge of any claim against or liability of said Henry H. Ficken and Security Corporation, *by reason of his or its statutory stockholders' liability*"; the remainder of the capital stock, $50,000, "to be subscribed and paid for by such stockholders who may desire so to do and which payment shall, to the extent that it equals or exceeds the amount of stockholders' liability of such subscriber, release and discharge him from his statutory stockholders' liability"; all of the stock "to be issued to and held by trustees under a voting trust, wherein said stock shall be held by said trustee for the benefit, first of all, of the depositors, and then for the benefit of the creditors of said bank and corporation and of the South Carolina Loan & Trust Company's Bank, until payment to them in full, and then for the benefit of such persons subscribing and paying for such stock, according to their respective interests." Upon such assignment to the Mortgage Loan Company, it should issue to the depositors of the South Carolina Loan & Trust Company and of the Security Corporation certificates to the amount of 75 per cent. of their deposits (the South Carolina National Bank having paid them 25 per cent.), entitling the holders to share in all the assets of the corporation prior to any distribution to the stockholders. A similar provision was made for the South Carolina Loan & Trust Company's Bank, except that the depositors therein were to receive in cash from the South Carolina National Bank 51½ per cent. of their deposits and 38½ per cent. in certificates of the Mortgage Loan Company, the remaining 10 per cent. to be taken care of out of collections from the remaining assets of the bank.

Other provisions appear in the proposition which do not appear particularly pertinent to the present issue. The pro-

posed plan of the South Carolina National Bank was accepted and approved by the committees of the depositors and by the president of the three corporations on January 13, 1927, and by the State Bank Examiner. On January 15, 1927, application was made by the Bank Examiner to his Honor, Judge Grimball, for an order appointing the Bank Examiner Receiver of the said banks, which he granted, and in this order he approved of the plan of liquidation attached to the Bank Examiner's petition, as submitted by the South Carolina National Bank and approved by the depositors' committees and the State Bank Examiner.

On January 22, 1927, the Mortgage Loan Company was chartered specifically to take over the assets of the said banks and liquidate them, and under order of the Court of Common Pleas the Receiver, in consideration of the payment to the depositors by the South Carolina National Bank as above set forth, sold, transferred, and assigned to it certain of the assets of said banks, and in consideration of the issuance to each depositor of a beneficial certificate of interest in the Mortgage Loan Company, equal to the remainder of his deposit, sold, assigned, transferred, and set over to that company the remaining assets, and it proceeded to and is now liquidating the same.

On March 23, 1927, the depositors' committee made and filed a petition in the cause, in which it is alleged that certain of the stockholders had paid their statutory stockholders' liability pursuant to the offer and order of Court, but that certain other stockholders, who were prepared to pay their stockholders' liability, have questioned the right of the Mortgage Loan Company to give a valid receipt therefor ; that the petitioners (the depositors' committee) intend to bring a suit on behalf of themselves and all other depositors against such stockholders as do not pay their statutory liability, but that they are informed that a large number of those delinquent will make payment, if assured that payment of the Mortgage Loan Company will operate as a full discharge.

On the same day, March 23, 1927, his Honor, Judge Grimball, made an order that all stockholders of South Carolina Loan & Trust Company and Security Corporation, who have paid or who may thereafter pay to the Mortgage Loan Company the amount of their statutory stockholders' liability be forever discharged of all stockholders' liability as stockholders in said banks, and enjoining all persons, firms, and corporations from bringing suit to recover payment of such liability against any stockholders so paying.

On April 11, 1927, Robert E. Lee, who had a deposit of $9.28 in South Carolina Loan & Trust Company, and who had already signed a signature card and accepted payment of 25 per cent. thereof in cash, commenced this action against all the stockholders (those who had paid the Mortgage Loan Company, as well as those who had not, including Henry H. Ficken and the Security Corporation), seeking to collect their statutory stockholders' liability.

On April 13, 1927, the Mortgage Loan Company and A. S. Fant, as Receiver, filed their petition in the Court of Common Pleas for Charleston County, setting out the proceedings as above and praying that the action of Lee be dismissed. Judge Sease, presiding, issued a rule to show cause and granted a temporary injunction, restraining Lee from proceeding pending a hearing by him. Judge Sease heard the matter upon the petition last above mentioned, the return of Robert E. Lee, and a traverse to the return, and on June 30, 1927, filed his order and decree holding that Lee had a right to proceed, from which decree this appeal is taken.

The main objection which his Honor, Judge Sease, has sustained to the petition, is that his Honor, Judge Grimball, was without jurisdiction "to pass any orders authorizing the Receiver or the Mortgage Loan Company to call in or attempt to collect the statutory liability of the stockholders." The effect of this order we think would be disastrous to the interests of the corporations, their creditors, and their depositors, including the plaintiff in the

Lee case and those whom he represents. It would undo all that has been done, and leave Lee free to pursue an independent course and create "confusion worse confounded," with not only no benefit to the depositors, but to their distinct prejudice.

It is not intended to impinge upon the rule established by the cases of *Johnson v. Adams,* 138 S. C., 409; 136 S. E., 885. *State v. Bank of Clio,* 129 S. C., 109; 123 S. E., 773. *Ford v. Sauls,* 138 S. C., 426; 136 S. E., 888. And *Bradley v. Aimar,* 140 S. C., 14; 138 S. E., 401, that the statutory liability of stockholders of a bank is a liability to the depositors. It is in no sense an asset of the bank, and with it the Receiver has nothing to do.

These are all cases involving *suits* against the stockholders by the Receiver upon their statutory liability. In the case at bar there has been no suit brought against the stockholders by the Receiver or by the Mortgage Loan Company. Judge Grimball's order appointing the Receiver, and approving the plan of liquidation attached to the petition on which said order was made, did not authorize either the Receiver or the corporation to be organized to institute such suit. It merely provided for a method by which stockholders of the insolvent bank could relieve themselves from their liability, and that was by voluntarily paying over the amount of their stockholders' liability to the Mortgage Loan Company. Neither the Constitution of 1895 nor the Code of Laws of 1922 provides that a stockholder must wait until he is sued before he can pay his statutory stockholders' liability, and thus relieve himself of the expense incident to a suit.

The only statutory enactment in relation to the liability of stockholders of insolvent banks is found in Section 3998, Civ. Code 1922, providing that stockholders in all such banks and banking institutions shall be liable to depositors in a sum equal in amount to their stock over and above the face value of the same. There has been no attempt to provide by statute the method of enforcing this provision of the Code, or as to

the collection and distribution to the depositors entitled thereto of the liability of the stockholders in insolvent banks. All that the Supreme Court of this state has decided is that this is not an asset of the bank, and does not pass to the Receiver of such bank, but inures to the benefit of each and every depositor and is enforceable by all the depositors, or a depositor acting in behalf of himself and all the other depositors. The method of procedure usually followed in connection with the collection of such stockholders' liability is to have such a case, when brought, referred to a Master to ascertain the amount of the respective liabilities of the various stockholders against whom judgment may be taken, and any defendant may make payment to the Master in preference to having judgment entered against him and costs added and is discharged upon such payment to the Master. The Master then calls upon the depositors to prove their claims before him, so as to participate in the ratable distribution of the funds so collected.

It is clear that a stockholder, wishing to relieve himself of such liability without suit against him, cannot do so by selecting some one depositor and making payment to him. He could certainly get a good acquittance by paying the amount to the Clerk of Court, or by paying the amount to the receiver of such insolvent institution, as agent or trustee for its distribution to the depositors, and there is no reason why a payment made to the Mortgage Loan Company, the creature of all of the depositors, organized by them in their behalf and for their benefit, and representing in its corporate capacity the combined body of the depositors, should not be a proper method for the collection and distribution of the stockholders' liability, certainly in so far as the same may be done without suit being brought, and especially when such method will save the fees of attorneys, the costs of Court, the commissions of the Master, and usually the commissions of both Master and Receiver. There is certainly no statutory inhibition against such a course. This Court has never for-

bidden it, and reason should approve it. Judge Grimball's order was therefore a valid order, passed in a cause over which he had jurisdiction, and is not subject to collateral attack.

But, even if it were to be admitted for the sake of argument that Judge Grimball was without jurisdiction to pass this order, and if the order were to be considered void for lack of jurisdiction *of the subject-matter,* yet the Court, in this case, will not grant any relief to the plaintiff Robert E. Lee. Robert E. Lee has accepted and retains, and has made no offer to restore, the sum of $2.47, 25 per cent. of the amount of his deposit, which amount he received on the 16th day of February, 1927. By his conduct in accepting a part of the proceeds of the loan made by the South Carolina National Bank, which the South Carolina National Bank would not have made, had it not been for the payment by Henry H. Ficken to the capital stock of the Mortgage Loan Company of the sum of $100,000, Robert E. Lee has estopped himself from objecting to the validity of the order of Judge Grimball, appointing the Receiver and approving the plan of liquidation. *Carrigan v. Drake,* 36 S. C., 354; 15 S. E., 339. *Chalmers v. Turnipseed,* 21 S. C., 126. *Hand v. Railroad Co.,* 12 S. C., 314; 15 C. J., 807. *Bradley v. Aimar,* 140 S. C., 14; 138 S. E., 401. *Scheper v. Scheper,* 125 S. C., 89; 118 S. E., 178. *Sage v. Finney,* 156 Mo. App., 30; 135 S. W., 996. *Hopper v. Nicholas,* 106 Ohio St., 292; 140 N. E., 186.

The argument *ab inconvenienti,* while not a conclusive one, is persuasive. We observe what has been done in pursuance of the plan adopted, all of which would be undone if the order appealed from should be sustained. Henry H. Ficken, at the time of the failure of the bank, owned 10 shares of the stock; his statutory liability was $1,000; he has paid in, under the plan, $1,000,000 for the benefit of the depositors, 100 times as much as he could be made to respond for under the Lee suit, and all of which, except $1,000,

would have to be returned to him. Stockholders other than Ficken and the Security Corporation have paid in $11,700 in settlement of their stockholders' liability. This would have to be returned and a second case instituted by Lee against them.

In addition thereto, stockholders of the South Carolina Loan & Trust Company, who have not yet paid their stockholders' liability, aggregating approximately 50 shares, have negotiated with the Mortgage Loan Company, seeking a little additional time in which to make their payments without the expense of suit. When these payments shall have been made, the depositors will then have paid on account of statutory stockholders' liability approximately $116,700, without the expense of suit. The amounts already collected on account of said statutory stockholders' liability have been used by the Mortgage Loan Company to pay the South Carolina National Bank on account of the amounts advanced by said South Carolina National Bank to the depositors of the South Carolina Loan & Trust Company.

By April 28, 1927, 1,589 depositors of the South Carolina Loan & Trust Company, including Robert E. Lee, had proved and filed their claims with the Mortgage Loan Company and had signed signature cards. The actual loss to the depositors, upon a disruption of the plan under which the liquidation is proceeding, would be not less than $100,-000, plus the costs of a Receivership under the Lee suit.

We regard the Lee suit as not only unnecessary, but disastrous to the interest of the depositors in whose behalf Lee, with a claim of about $9, upon which $2.-50 has been paid, is essaying to act. "A party will not be permitted to maintain an action which is merely vexatious *or which is unnecessary* and could *not be productive of any* practical results." 1 C. J., 975.

Neither the plaintiff, nor the other depositors in like plight, for whose benefit he has brought this suit, can possibly derive any practical benefit therefrom. On the contrary, it has

been conclusively shown that the only possible result of this suit to the plaintiff and to all other depositors is the impositon of a huge and unnecessary loss. In the case of *Foster v. Mansfield, C. & L. M. R. Co.,* 146 U. S., 88, 101; 13 S. Ct., 28, 33 (36 L. Ed., 899), the Court, after holding that the plaintiff was guilty of laches, says:

"We are the more readily reconciled to this conclusion from the fact that *it does not appear* that, if this sale were set aside and held for naught, *the decree would redound to the advantage of the plaintiff.* The only allegation as to his interest is that he is the owner and holder of 258 shares of the capital stock of the company of the par value of $12,900. It does not appear how much of its authorized capital stock of $4,000,000 was actually issued, though there is an allegation in the bill that the Pennsylvania Company wrongfully obtained $1,500,000 of the stock of the Goldwater Company in addition to the preferred stock, which the plaintiff averred was to be issued, for actual expenditures at cash values made by this company. Whatever amount was issued, *it is safe to infer that plaintiff's interest was comparatively very small.* * * * [Italics ours.]

"Under these circumstances, the trustees could hardly fail to obtain another decree of foreclosure for a large amount; and, as the road was hopelessly insolvent, it is hardly within the bounds of possibility that it should sell for more than enough to pay the amount adjudged to be due, to say nothing of the judgment creditors' claims of Swan, Rose & Co. In a case of this kind, where the plaintiff seeks to annul a long-standing decree, it is a circumstance against him that he does not show a probability at least of a personal advantage to himself by its being done. A Court of equity is not called upon to do a vain thing. It will not entertain a bill simply to vindicate an abstract principle of justice or to compel the defendants to buy their peace, and *if it appear that the parties really in interest are content that the decree shall stand, it should not be set aside at the suit of*

*one who could not possibly obtain a benefit from such action."*

We think, therefore, that the petition should have been granted. The judgment of this Court is that the order appealed from be reversed, and that the case be remanded to the Circuit Court for further proceedings consistent herewith.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE, STABLER and CARTER concur.