### SHOEMAKER v. HARRINGTON et al.

No. 12340.

Court of Civil Appeals of Texas. Fort Worth. June 21, 1930.

Rehearing Denied July 19, 1930.

Simpson, Collins & Moore and Leo Brewster, all of Fort Worth, for appellant.

Lee, Lomax & Wren and C. H. Milliken, all of Fort Worth, for appellees.

## CONNER, C. J.

This suit was instituted by the American National Insurance Company, seeking a determination of which of two rival claimants was entitled to benefits provided for in a life insurance policy issued by the company to appellant Hardy Shoemaker, in which his wife, Carrie A. Shoemaker, was made the beneficiary. Appellant and appellee E. L. Harrington, independent executor of the last will and testament of Mrs. Carrie A. Shoemaker, were duly interpleaded and made parties, and this appeal is from the judgment of the court disposing of the conflicting claims of the interpleaded parties.

We will not incumber our opinion with the detailed statement of the rather voluminous pleadings of the parties. We think it sufficient to say that they present the following facts, which are undisputed, to wit: On December 26, 1908, the appellee insurance company issued to the appellant a twenty-year pay life insurance policy in which the appellant's wife, Carrie A. Shoemaker, was named as beneficiary. This policy provided that, if the insured was living at the end of the twentieth year from the date of the contract, and if the payment of premiums was continued to that time, the insured should have his option of one of the following accumulated benefits: (1) A participating paid-up policy in the sum of $2,000, $130 cash, and the policy's share of the accumulated profits then apportioned; or (2) a cash surrender value of $1,262 and the policy's share of the accumulated profits then apportioned, in cash. The appellant lived, and the premiums were paid for the entire time provided for in the policy. On June 25, 1927, the appellant executed an assignment of the policy to his wife, Carrie A. Shoemaker. On July 6, 1928, the appellant and Carrie A. Shoemaker entered into a property settlement contract in contemplation of a divorce, which contract contained the following provisions:

"Whereas, Carrie Lowe Shoemaker, plaintiff, filed a suit in the 17th District Court of Tarrant County, Texas, which suit is for divorce against H. Shoemaker, which said cause is now pending in the District Court of Tarrant County, Texas, 17th Judicial District before the Honorable Frank Culver, and

"Whereas, the parties to the said suit are the owners of certain property and owe certain debts, all of which are hereinafter described and referred to, and whereas, it is the desire of the parties to settle and dispose of their respective rights as to the said property, real, personal and mixed, by an amicable agreement and understanding without the necessity of a judicial determination of their property rights in the suit above referred to. That the following property is owned by the parties hereto:

"5. One certain insurance policy in the sum of $2000.00 in the American National Insurance Company which said policy is in force and the defendant, H. Shoemaker, agrees that the beneficiary shall remain as Carrie Lowe Shoemaker and that he will not change the same as to the beneficiary, and the proceeds thereof are to be paid to her.

"That in addition to the above the said Carrie Lowe Shoemaker agrees to pay to H. Shoemaker the sum of One Thousand ($1000.-00) Dollars in cash, which amount is paid to him for all his right, title and interest in and to all of the community property real, personal and mixed, belonging to the said Carrie Lowe Shoemaker and H. Shoemaker and Carrie Lowe Shoemaker as her separate property."

On July 6, 1928, the said Carrie A. Shoemaker obtained a divorce from the appellant in the Seventeenth district court of Tarrant county, Tex. This decree only dissolved the bonds of matrimony between the parties and did not adjudicate any of the property rights. Carrie A. Shoemaker died on the 14th of November, 1928, leaving a will in which E. L. Harrington was appointed independent executor. It was admitted that the appellee insurance company was bound to deliver to the appellant or to the appellee E. L. Harrington, independent executor, one of the accumulated benefits provided for in the policy.

The case was tried by the court without a jury, and on July 22d the court entered a judgment in favor of the appellee E. L. Harrington, independent executor of the estate of Carrie A. Shoemaker, deceased, for the sum of $1,520.97, less the sum of $150 allowed the appellee American National Insurance Company as attorney's fees. The judgment denied the appellant any relief on his cross-action, and adjudged the costs, including the $150 attorney's fees, against him. It further provided that the appellee insurance company recover $150 as attorney's fees to be taxed as costs.

The appellant has duly perfected his appeal by filing his bond on August 20, 1929, and by filing his record in this court within the proper time; and the case is now before this court for determination.

Appellant thus states the question presented by his assignments: "There is really only one question in this case: Could Carrie A. Shoemaker, after her divorce from the appellant, assert any interest in the policy, either as beneficiary or as assignee by virtue of the assignment of June 25, 1927, and the property settlement contract of July 6, 1928?"

In support of appellant's contention, the following authorities are cited: 37 C. J. 397; Cheeves v. Anders, 87 Tex. 287, 28 S. W. 274, 47 Am. St. Rep. 107; Hatch v. Hatch, 35 Tex. Civ. App. 373, 80 S. W. 411; Price v. Supreme Lodge, Knights of Honor, 68 Tex. 361, 4 S. W. 633; Schonfield v. Turner, 75 Tex. 324, 12 S. W. 626, 7 L. R. A. 189; Northwestern Mut. Life Ins. Co. v. Whiteselle (Tex. Civ. App.) 188 S. W. 22; Id. (Tex. Com. App.) 221 S. W. 575. We will not review these authorities separately. We think it sufficient to say that the conclusion to be gathered therefrom is that a divorced wife has no insurable interest in the life of her husband, and hence is not entitled to the benefits of a policy of insurance covering his life either by inheritance or by assignment.

Appellee, however, contends, first, that the cash surrender value of a policy of insurance wherein the company agrees to pay a fixed sum of money on a certain date provided the conditions of the policy contract are performed by the insured, becomes, after performance of the required conditions by the insured, a chose in action or a debt against the insurance company, and the insured may assign it for a valuable consideration and pass title thereto and confer upon the assignee the right to collect the debt at its maturity, although such assignee has no insurable interest in the life of the insured; and, second, that one who has accepted the benefits of a contract is estopped to dispute its validity.

■ We find ourselves in accord with the contentions of appellee. The courts have uniformly held that an insurable interest is necessary to support a recovery of the proceeds of a policy of life insurance. The English courts base their holding upon the proposition that without such insurable interest a life insurance policy is a mere wager and thus opposed to public policy. Many American courts follow the English rule, but others, including those of Texas, place their holding upon the higher ground that it is against public policy to permit an inducement to be offered to one person to take the life of another. This is the basis of all of the Texas decisions on the question of insurable interest. The insurable interest rule had its inception many years ago, at a time when life insurance was intended for protection only. Within the past fifty years the investment feature has been added to life insurance, and to-day the leading companies of the United States are constantly adding new and attractive features to their policies, mostly of an investment character. It must be conceded that under the Texas decisions a divorced wife has no insurable interest in the life of her husband, but we have concluded that an insurable interest was unnecessary to sustain the right of Mrs. Shoemaker to the surrender value of the insurance in question.

The undisputed facts are that the policy in question was issued to appellant on December 26, 1908, his wife, Carrie Shoemaker, being named therein as beneficiary; that the policy, among other things, provided for an optional surrender value; that Mr. and Mrs. Shoemaker continued their marital relation until July 6, 1928, when Mrs. Shoemaker obtained a divorce from appellant. This decree only dissolved the bonds of matrimony, not adjudicating any of the property rights of the parties. However, it appears that on June 25, 1927, appellant and his wife, in a form prescribed by the policy, joined in an assignment, which reads as follows: "We hereby assign, transfer and set over unto Caroline A. Shoemaker of Fort Worth, Tarrant County, Texas, the policy of insurance numbered 8649 issued by the American National Insurance Company of Galveston, Texas, upon the life of Hardy Shoemaker of Fort Worth, Texas, together with all dividends. benefits and advantages to be had or derived from said policy, this assignment being sub-

ject to all of the conditions of the said policy and the rules and regulations of the company in connection therewith."

This instrument was duly signed and acknowledged before a notary public by both Mr. and Mrs. Shoemaker. Moreover, on the day of the divorce decree, to wit, on July 6, 1928, the following instrument was entered into by Mr. and Mrs. Shoemaker, viz.:
"The State of Texas, County of Tarrant.

"Know all men by these presents:

"Whereas, Carrie Lowe Shoemaker, plaintiff, filed a suit in the 17th District Court of Tarrant County, Texas, which suit is for divorce against H. Shoemaker, which said cause is now pending in the district court of Tarrant County, Texas, 17th Judicial District before the Honorable Frank Culver, and

"Whereas, the parties to the said suit are the owners of certain property and owe certain debts, all of which are hereinafter described and referred to, and whereas it is the desire of the parties to settle and dispose of their respective rights as to the said property, real, personal and mixed, by an amicable agreement and understanding without the necessity of a judicial determination of their property rights in the sum above referred to. That the following property is owned by the parties hereto:

"1. The homestead situated in 1000 N. W. 15th Street, being Lot 6 in Block 108, North Fort Worth, Tarrant County, Texas, it being the contention of plaintiff that the greater part of the purchase price of this homestead was paid by her out of her separate funds, and that said home is paid for, and that while the defendant contributed to the payment of some of the obligations said home at the time it was being acquired and paid for, yet he would own only a small portion of said home by reason of the fact that the greater part of the purchase price was paid by plaintiff, Carrie Lowe Shoemaker, out of her separate funds.

"2. The household and kitchen furniture situated in said above described home located on said above described lot.

"3. One note in the sum of $3,500.00, signed by Mr. A. R. Brumlow, being secured by house and lot in J. W. Shirley Addition, Fort Worth, Texas, in North Fort Worth.

"4. Certain sums of money which are now on deposit in the Fort Worth National Bank being $81.85, and all money now in the possession of Carrie Lowe Shoemaker which belongs to her either as her separate estate or community estate.

"5. One certain insurance policy in the sum of $2,000.00 in the American National Insurance Company, which said policy is in force and the defendant H. Shoemaker agrees that the beneficiary shall remain as Carrie Lowe Shoemaker and that he will not change the same as to the beneficiary, and the proceeds thereof are to be paid to her.

"And whereas, the said parties owe certain debts, which the defendant herein is liable thereon, which said debts are as follows:

1. All Saints Hospital, Fort Worth, Texas .......................... $1,295.10
2. Dr. Will and Dr. W. C. Duringer, physicians in charge of case, Bill .................... 250.00
3. To amount due on the homestead hereinabove mentioned, the same being a paving lien for paving improvements on the streets adjacent to said home 500.00

$2,045.10

"It is understood and agreed that the said H. Shoemaker is now in possession of the premises described herein as the homestead and is living there, and he here and now agrees to give full and complete possession of said premises, together with all household and kitchen furniture to the said Carrie Lowe Shoemaker on demand by her for the possession of said premises.

"Now, therefore, it is agreed by and between the parties hereto that the defendant in said suit, H. Shoemaker, will convey to the plaintiff in said suit, Carrie Lowe Shoemaker, all of his right, title and interest in and to the homestead hereinabove described and will make a bill of sale to the said Carrie Lowe Shoemaker to all his right, title and interest in and to the household and kitchen furniture located and situated in said house, it being understood that the said Carrie Lowe Shoemaker shall assume and agrees to pay all of the paving lien against said home, and the defendant in said suit, H. Shoemaker, is not to be called upon or be liable for any part of the paving lien against said home.

"It is further understood and agreed between the parties hereto that the plaintiff in said suit, Carrie Lowe Shoemaker, will pay the bills above referred to owing to All Saints Hospital and the doctors' bills and all other bills of every kind against the said Carrie Lowe Shoemaker and her said husband, H. Shoemaker, will be paid by the defendant, H. Shoemaker, and these bills amount to the following: Whatever the grocery bill may be due and owing to Cross Grocer Company, Fort Worth, Texas, and the bills for the electric light, gas and phone and water are to be paid by plaintiff in said suit, Carrie Lowe Shoemaker, from and after the first day of July, 1928.

"That in addition to the above the said Carrie Lowe Shoemaker agrees to pay to H. Shoemaker the sum of One Thousand ($1000.00) Dollars in cash, which amount is paid to him for all his right, title and interest in and

to all of the community property, real, personal and mixed, belonging to the said Carrie Lowe Shoemaker and H. Shoemaker and Carrie Lowe Shoemaker as her separate property.

"Witness our hands this 6th day of July, A. D. 1928.

"[Signed]  H. Shoemaker
"[Signed]  Carrie Lowe Shoemaker

"The State of Texas, County of Tarrant.

"Before me, the undersigned authority a notary public in and for Tarrant County, Texas, on this day personally appeared H. Shoemaker, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

"Given under my hand and seal of office this 6th day of July, A. D. 1928.

"[Seal] [Signed] V. Harvey,
"Notary Public, Tarrant County, Texas."

It was admitted on the trial that there was due by the plaintiff, American National Insurance Company, under the policy in question, the cash surrender value of $1,262 and, in addition thereto, $258.97; said sum being the accumulated profits proportioned to said policy. All premium payments due and payable under said policy had been paid, and the policy of insurance matured according to its terms on the 26th day of December, 1928.

With an exception not shown to exist, it was also admitted that all the terms and provisions of the property settlement contract by the defendant Hardy Shoemaker and Caroline Lowe Shoemaker, deceased, dated July 6, 1928, were fully performed by each of the parties thereto except the provisions thereof relating to the insurance policy involved in this suit; and it is admitted that such provisions were performed.

■ Without undertaking to discuss them at length, we think the cases cited by appellant are to be distinguished from the case before us. Here the surrender value of the policy had substantially matured in full and became a liquidated demand at the time of its transfer to Mrs. Shoemaker. It was recognized and treated by both husband and wife at the time of the divorce as joint property, subject to lawful disposition in the settlement of their property rights. By agreement solemnly entered into, their property was voluntarily divided, Mrs. Shoemaker being awarded the surrender value of the policy. It is common knowledge of which we may take judicial notice that trial courts in divorce cases constantly recognize such agreements, when fairly made, and enforce them when called upon to do so, and we know of no good reason why we should not do so in the present case.

In Grigsby v. Russell, 222 U. S. 149, 32 S.

Ct. 58, 59, 56 L. Ed. 133, 36 L. R. A. (N. S.) 642, Ann. Cas. 1913B, 863, by the Supreme Court of United States. Mr. Justice Holmes. who delivered the opinion, among other things, had this to say:

"Life insurance has become in our days one of the best recognized forms of investment and self-compelled saving. So far as reasonable safety permits, it is desirable to give to life policies the ordinary characteristics of property. This is recognized by the bankruptcy law, § 70. which provides that unless the cash surrender value of a policy like the one before us is secured to the trustee within thirty days after it has been stated, the policy shall pass to the trustee as assets. Of course the trustee may have no interest in the bankrupt's life. To deny the right to sell except to persons having such an interest is to diminish appreciably the value of the contract in the owner's hands. The collateral difficulty that arose from regarding life insurance as a contract of indemnity only (Godsall v. Boldero, 9 East, 72), long has disappeared (Phœnix Mut. L. Ins. Co. v. Bailey, 13 Wall. 616, 20 L. Ed. 501). And cases in which a person having an interest lends himself to one without any, as a cloak to what is, in its inception, a wager, have no similarity to those where an honest contract is sold in good faith.

"Coming to the authorities in this court, it is true that there are intimations in favor of the result come to by the circuit court of appeals. But the case in which the strongest of them occur was one of the type just referred to, the policy having been taken out for the purpose of allowing a stranger association to pay the premiums and receive the greater part of the benefit, and having been assigned to. it at once. Warnock v. Davis, 104 U. S. 775, 26 L. Ed. 924. On the other hand it has been decided that a valid policy is not avoided by the cessation of the insurable interest, even as against the insurer, unless so provided by the policy itself. Connecticut Mut. L. Ins. Co. v. Schaefer, 94 U. S. 457, 24 L. Ed. 251. And expressions more or less in favor of the doctrine that we adopt are to be found also in Ætna L. Ins. Co. v. France, 94 U. S. 561, 24 L. Ed. 287; Mutual L. Ins. Co. v. Armstrong, 117 U. S. 591, 29 L. Ed. 997, 6 S. Ct. 877."

In Rylander v. Allen, 125 Ga. 206, 53 S. E. 1032, 6 L. R. A. (N. S.) 128, 5 Ann. Cas. 355, by the Georgia Supreme Court, it was held, quoting from the headnotes, that: "One has the right to procure insurance on his own life and assign the policy to another, who has no insurable interest in the life insured, provided it be not done by way of cover for a wager policy."

In a note to this case (6 L. R. A. [N. S.] 128) it is said that: "While the authorities

are in conflict the decision in Rylander v. Allen, sustaining such an assignment, is upheld in the majority of jurisdictions."

The quotation is followed by a long list of cases both for and against the proposition, including the case of Wilton v. New York Life Ins. Co., 34 Tex. Civ. App. 156, 78 S. W. 403, by the Galveston Court of Civil Appeals, which holds that there can be no recovery on a life insurance policy by one having no insurable interest on the life of the insured. That case was a suit against the life insurance company to enforce a policy after the death of the insured. Here the suit is not to enforce the contract of the life insurance company. The life insurance company is nonresisting. It acknowledges a matured indebtedness, and the suit is by the legal representative of the assignee to enforce a contract obligation of the appellant. We think the matured obligation of the insurance company to pay the matured value of the policy is property as truly so as any other species of obligation, and we are unable to see any valid reason why its transfer by appellant was not effective.

In Schonfield v. Turner, 75 Tex. 324, 12 S. W. 626, 7 L. R. A. 189, and other cases, it is held that a creditor may lawfully have the life of his debtor insured and enforce the terms of the policy to cover the indebtedness and premiums paid to keep the policy in force. If this can be done without violating the principle of public policy held to be controlling in Hatch v. Hatch, 35 Tex. Civ. App. 373, 80 S. W. 411, it is difficult to see why Mrs. Shoemaker should be denied the benefit of her settlement and assignment in so far as now sought to be enforced. All persons are presumed to know the law. Mr. and Mrs. Shoemaker therefore presumptively knew that the policy could not legally be kept alive by Mrs. Shoemaker until the death of Mr. Shoemaker and then be enforced for the full amount by Mrs. Shoemaker. In such case Mrs. Shoemaker would be interested in the death of her husband and hence denied full recovery on the ground of public policy. But in the case before us the subject of settlement was evidently a matured obligation of the insurance company in contemplation of the parties and treated by the husband and wife, both before and after the divorce, as property subject to division. As to such obligation of the insurance company, the right thereto was vested in Mrs. Shoemaker at the time of the division and the death of Mr. Shoemaker would neither add to nor take from such right. She therefore was not interested in the death of her husband, certainly not more so than an ordinary debtor. Of course a different view might be taken if the insured was seeking to continue the policy for the benefit of another beneficiary. But such is not the case here. The insured is making claim to the matured obligation of the insurance company only. His assignment to his wife testifies that he abandoned a purpose to continue the policy until his death, and we feel unwilling to extend the doctrine invoked by appellant to the circumstances of the case now before us.

There is yet another view of the circumstances which renders appellant's claim to the amount due under the terms of the policy inequitable. The formal written assignment executed by appellant imports a valuable consideration received by him from Mrs. Shoemaker, and, as we understand the record, it is undisputed that in compliance with the terms of the property settlement Mrs. Shoemaker paid appellant $1,000 in cash and assumed and paid $2,045.10 of the community debts, for which she was not otherwise liable. Appellant makes no offer to restore what he received or to otherwise do equity, and he should hence be denied the recovery he now seeks. See Simkins on Equity, 671; Mayer v. Ramsey, 46 Tex. 371; Hess v. Dean, 66 Tex. 667, 2 S. W. 727; Guest v. Guest, 74 Tex. 664, 12 S. W. 831; Leather Mfrs. Nat. Bank v. Morgan, 117 U. S. 96, 6 S. Ct. 657, 29 L. Ed. 811; Mutual Life Ins. Co. v. Tuemler, 251 S. W. 727; Sage v. Finney, 156 Mo. App. 30, 135 S. W. 996.

We accordingly conclude that the judgment below should in all things be affirmed, to wit, that appellant Hardy Shoemaker take nothing by reason of his answer and cross-bill against the plaintiff American National Life Insurance Company, and the defendant E. L. Harrington; that the appellee E. L. Harrington, as independent executor, recover of and from the plaintiff American National Life Insurance Company the sum of $1,520.97, the matured value of the policy in question, with interest thereon from the 22d day of July, 1929, until paid at the rate of 6 per cent. per annum, less the sum of $150 allowed the plaintiff company as attorneys' fees, to be taxed as part of the costs of this suit, for all which said executor may have his execution against the plaintiff insurance company, and further that the plaintiff company recover from the defendant its costs and that the executor recover of appellant Hardy Shoemaker all costs of suit, including the $150 allowed the insurance company as attorneys' fees, for all of which execution may issue.

On Motion for Rehearing.

The questions presented in this case have not been free of difficulty, and in behalf of appellant his able counsel have presented a forceful motion for rehearing. While we think the conclusion reached in our original opinion meets at least the equities of the case and that the motion for rehearing should be overruled, yet we will call attention to the effect, as we construe it, of the assignment of the policy in question made by appellant

to his wife on June 25, 1927, and which was passed without any emphasis in our original discussion. It is clear that at this time appellant's wife had an insurable interest in the policy, and the record suggests that the assignment was made to secure funds advanced by the wife to which she had right of control, and we know of no reason why the assignment did not vest in the wife a right to the benefits of the policy. The record discloses that this condition of affairs continued until the decree of divorce. The assignment executed on that day, it is fair to assume, was executed prior to the decree, at a time when the wife's insurable interest existed. At that time too, as we think the record shows, all premiums for the 20-year period had been paid, and, as it seems to us, the wife became vested with the right to the then existing obligations that were enforceable to have the surrender value paid to her, and we do not think that the mere fact that by the divorce her insurable interest terminated ought to be given the effect of divesting a right fixed in the wife prior to the decree. It is true that a divorce would prevent any right on the part of the wife to enforce other provisions of the policy, but not, as we think, destroy a right already vested in her.

The motion for rehearing is overruled.